## Appeal of Stratton Corporation

[600 A.2d 297]

No. 90-278

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed October 11, 1991

438

*Alan B. George* of *Carroll, George & Pratt*, Rutland, for Appellant.

*Robert E. Woolmington* of *Witten, Saltonstall & Woolmington, P.C.*, Bennington, for Appellees Stratton Area Citizens Committee and Uptegroves.

*Jeffrey L. Amestoy*, Attorney General, and *William Griffin*, Chief Assistant Attorney General, Montpelier, for Appellee State.

**Dooley, J.** Appellant, the Stratton Corporation (Stratton), appeals the Windham Superior Court's dismissal of its challenge to a proposed rule of the Vermont Water Resources Board reclassifying a portion of Kidder Brook. We conclude that dismissal was proper and affirm.

On March 3, 1989, appellees William and Elizabeth Uptegrove and the Stratton Area Citizens Committee filed a petition with the Board, seeking reclassification of Kidder Brook, an upland stream located in the towns of Jamaica and Stratton, from Class B to Class A. On May 16, 1989, the Board initiated rulemaking proceedings, as required by the Vermont Water Pollution Control Act, 10 V.S.A. §§ 1250–1254. In accordance with the procedures for rulemaking set forth in the Vermont Administrative Procedure Act at 3 V.S.A. §§ 836–843, the Board published a proposed rule to reclassify the brook, held a public hearing on June 27, 1989, and set a July 6, 1989, deadline for public comment.

At the June 27 hearing, Stratton asserted that the Due Process Clause of the United States Constitution required the Board to conduct formal, trial-like proceedings rather than an informal rulemaking procedure. Stratton based this assertion on property rights in the land adjoining the brook and its plans for future development of the area. The Board rejected Stratton's due process argument and proceeded to hear testimony from proponents and opponents of reclassification, including representatives of Stratton. The Board extended the public comment period to July 20th to allow Stratton time to file additional written materials. On July 19, 1989, Stratton filed testimony of its consulting engineer detailing its permits and land development plans which would be threatened by the reclassification.

In all, Stratton presented approximately 125 pages of written testimony and supporting materials. It stated that it owned property on both sides of Kidder Brook and that it held six Act 250 land use permits involving these properties. According to Stratton, these permits would be subject to revocation or modification if the proposed reclassification were adopted. Further, Stratton had long-term plans for development in the Kidder Brook area. It was about to request an Act 250 permit to construct 498 homes and an 18-hole golf course in the area. Stratton claimed that these plans could be significantly affected or prevented by the reclassification.

On July 27th, the Board voted unanimously to proceed with adoption of the proposed rule to reclassify, and subsequently issued a written explanation and a denial of Stratton's request to reopen the proceedings. In response to Stratton's due process claim, the Board stated that it was "simply not convinced that reclassification of Kidder Brook to Class A [would] substantially affect any existing permit or development on lands owned by the Stratton Corporation." In support of this conclusion, the Board noted that Stratton's testimony, with one exception, showed only "generalized uneasiness" about the effect of the reclassification. The exception involved a contingency plan to build an on-site sewage disposal facility if its proposal to transfer wastewater to another area were not approved. The Board found this contingency need to be speculative. Overall, the Board found that "there [was] no material issue of fact in dispute among the parties to this proceeding."

Stratton appealed the reclassification to the Windham Superior Court, alleging that the Board's actions were arbitrary, unreasonable, and "contrary to law." In subsequent filings, as well as in its brief to this Court, Stratton clarified that its only claim on appeal was that the Board should have conducted "a trial-type hearing to adjudicate disputed facts" raised by the petition. On motion of the Board, appearing through the Attorney General, and the other appellees, the superior court dismissed Stratton's appeal, concluding that it was an attack on a rule which under the Administrative Procedure Act, 3 V.S.A. § 807, must be brought as an action for declaratory judgment in Washington Superior Court.

On appeal, Stratton argues that the court's jurisdictional decision was incorrect. Stratton further argues that even if the reclassification decision is rulemaking under the applicable statute, it can appeal the reclassification decision under 10 V.S.A. § 1270 and contest whether it was entitled to an adjudicative hearing as a matter of due process. The Attorney General, supported by the petitioners below, argues that reclassification is done by a rulemaking proceeding, 10 V.S.A. § 1253(c), and the exclusive method to challenge the validity of a rule is by declaratory judgment action in Washington Superior Court as provided in 3 V.S.A. § 807.

■ Ordinarily, we prefer to decide a jurisdictional issue rather than reach the merits. This case represents an exception to that preference for two reasons. First, while the parties have labeled the issue as jurisdictional, it is really one of venue. Since Stratton has limited its appeal solely to a question of law about the procedure used in reaching the reclassification decision, the issue in either proceeding would be the same.* In the Windham Superior Court, it would have to show that the Board acted "contrary to law." 10 V.S.A. § 1270. In the Washington Superior Court, it would need to show that the rule interferes with its

---

* The only difference is that, in an appeal, Stratton is bound by the record. 10 V.S.A. § 1270; *In re Town of Sherburne*, 154 Vt. 596, 603, 581 A.2d 274, 278 (1990). In a challenge to a rule, Stratton is free to build another record. Apparently, Stratton is satisfied by the record below and does not seek an opportunity to make a new record. Thus, the difference between the two routes is insignificant.

"legal rights." 3 V.S.A. § 807. We fail to see any relevant difference in Stratton's burden. Under modern pleading and civil procedure rules, it is of no consequence that one proceeding is labeled an appeal and the other an action for a declaratory judgment. See V.R.C.P. 1, 2 (there is one form of action known as a "civil action" applicable in suits of a civil nature and appeals from agencies). The relief sought by Stratton in either proceeding would be the same.

Second, the jurisdictional and substantive issues are interrelated. Stratton argues that the Board's proceeding was not rulemaking because of limits imposed by the Due Process Clause of the Fourteenth Amendment, and that it had a right to appeal from what was actually adjudication. Because this issue could affect the proper method of resolving this dispute, we conclude that it is better to decide the underlying substantive issue to bring about an efficient and complete end to this litigation.

In evaluating the merits, we turn first to the statutory scheme around which this dispute revolves. The Vermont Water Pollution Control Act provides that the state's surface waters are classified as either Class A, B, or C. 10 V.S.A. § 1252(a). The system establishes water quality standards to meet federal law. See *In re Town of Sherburne*, 154 Vt. at 601, 581 A.2d at 277. The classifications relate to water quality and suitable uses. Class "A" waters are the highest quality, "(1) [s]uitable for public water supply with disinfection when necessary; character uniformly excellent; or (2) [h]igh quality waters which have significant ecological value." Class "B" waters are "[s]uitable for bathing and recreation, irrigation and agricultural uses; good fish habitat; good aesthetic value; acceptable for public water supply with filtration and disinfection." Class "C" waters are of lesser quality. 10 V.S.A. § 1252(a).

All waters located above 2500 feet altitude are designated Class A. 10 V.S.A. § 1253(a). All remaining waters, unless "otherwise classified by the [B]oard prior to July 1, 1971, are designated Class B waters." 10 V.S.A. § 1253(b). Hence, only those portions of Kidder Brook located below 2500 feet are at issue here.

Section 1253(c) provides that the Board

> may on its own motion, and it shall upon petition by a state agency, a municipality or by thirty or more persons in interest alleging that it or they suffer injustice or inequity as a result of the classification of any waters, initiate a *rulemaking proceeding* to reclassify all or any portion of the affected waters in the public interest. In the course of this proceeding, the board shall comply with the provisions of [the Vermont Administrative Procedure Act], and hold a public hearing convenient to the waters in question. If the board finds that the established classification is contrary to the public interest and that reclassification is in the public interest, it shall file a final proposal of reclassification in accordance with 3 V.S.A. § 841. If the board finds that it is in the public interest to change the classification of any pond, lake or reservoir designated as Class A waters . . ., it shall so advise and consult with the department of health and shall provide in its *reclassification rule* a reasonable period of time before the *rule* becomes effective. (Emphasis added.)

Subsection (f) provides that when the Board is considering reclassification to class A, "[n]otwithstanding the provisions of subsection (c)" the Board need only determine whether the reclassification is in the public interest. Subsection (e) sets forth ten factors for consideration in determining the public interest.

The statutory language makes clear that the Legislature intended that the reclassification process be "a rulemaking proceeding" and labeled a resulting reclassification decision a "rule." See *In re Town of Sherburne*, 154 Vt. at 599 n.3, 581 A.2d at 276 n.3. On its face, the statute declines to treat reclassification as a "contested case," subject to the formal, adjudicative provisions of the Vermont Administrative Procedure Act, 3 V.S.A. §§ 809–813. The question before us is whether this choice denies Stratton due process of law.

██ ██ Due process requirements apply to the procedures that must be used in reaching agency determinations only if they are adjudicative, rather than rulemaking or legislative, in nature. *Bi-Metallic Investment Co. v. State Bd. of Equalization*, 239 U.S. 441, 446 (1915). In *Bi-Metallic*, the Court distin-

guished between an adjudication based on the particular facts concerning specific parties, and a legislative or rulemaking decision, which is made on the basis of general facts, and has a broad, prospective effect. *Id.* Only the former triggers procedural due process concerns. *Id.*

In his recent treatise, Professor Koch articulated three factors for assessing whether an agency action is rulemaking or adjudication: (1) whether the inquiry is of a generalized nature, rather than having "a specific, individualized focus"; (2) whether the inquiry "focuses on resolving some sort of policy-type question and not merely resolution of factual disputes"; and (3) whether the result is of "prospective applicability and future effect." 1 C. Koch, Administrative Law & Practice § 2.3, at 61–62 (1985). A review of these factors supports our conclusion that reclassification is a rulemaking decision.

First, the reclassification inquiry involves examination of generalized issues beyond the scope of the immediate parties, see 10 V.S.A. § 1253(e), rather than issues of fact focused primarily on the rights and duties of these parties. See *Hercules, Inc. v. EPA*, 598 F.2d 91, 118 (D.C. Cir. 1978). The ten criteria the Board must consider in determining the appropriate classification of the waters relate to the interests of all citizens of the state, not only landowners adjacent to the waters. See 10 V.S.A. § 1253(e). As the New York Court of Appeals instructed:

> A judicial type of hearing would, of course, be appropriate when *punishing individual violations*, while it would be manifestly inappropriate in connection with the *adoption* of a water classification *affecting many municipalities, individuals and industries*. (Emphasis in original.)

*Town of Waterford v. Water Pollution Control Board*, 5 N.Y.2d 171, 184, 156 N.E.2d 427, 433, 182 N.Y.S.2d 785, 794 (1959); see also *Niagara of Wisconsin Paper Corp. v. Wisconsin Dep't of Natural Resources*, 84 Wis. 2d 32, 54, 268 N.W.2d 153, 163 (1978) (water quality standards measure the water itself and do not focus on any polluter).

In considering this first factor, Professor Koch notes, the "result of rulemaking has no direct force of its own, except to set some norm which affects a subsequent decision." 1 C. Koch,

Administrative Law & Practice § 2.3, at 61 (1985). This is exactly the effect of the Board's classification. It determines the quality standards to which the water must be managed, but leaves actual management to the Secretary of Natural Resources. 10 V.S.A. § 1258; see also 2 W. Rodgers, Environmental Law: Air and Water § 4.16(A)(2), at 247 (1986) (water quality standards are justified as "study and planning, not as enforcement tools").

■ Second, the Board's determination involves a policy question concerning the level of quality of a public waterway in the public interest, rather than resolution of a discrete factual dispute. In many states, classification is done by the legislature and not the executive branch. See, e.g., 38 Me. Rev. Stat. Ann. §§ 464–470 (classifying all the waters of the State of Maine); *Shirley v. New Hampshire Water Pollution Comm'n*, 100 N.H. 294, 297, 124 A.2d 189, 193 (1956) (upholding legislative classification of Piscataquog River against constitutional challenge). The New Hampshire court noted that the classification process involved weighing all public benefits in light of the impact on private rights. *Id.* at 298, 124 A.2d at 194. Classification also involves technical expertise and judgment. See 1 F. Grad, Treatise on Environmental Law § 3.04, at 3-404 (1991). Scientific, economic and technical factors pertaining to an overall usage plan are generally not adjudicative facts conducive to resolution in a trial-type hearing. *South Terminal Corp. v. EPA*, 504 F.2d 646, 660 (1st Cir. 1974).

■ Finally, the reclassification decision is a rule of prospective applicability. Although it may well affect future land uses, it does not address past conduct. As the Board found, its impact on development of surrounding lands is speculative. The Board also found that reclassification did not directly affect any existing permits, including Act 250 permits. Stratton has not demonstrated those findings were wrong.

■ Stratton emphasizes that it is the principal land owner affected, and that reclassification will greatly impact its development plans. This alone does not turn the Board's action into a "contested case." As Justice Holmes observed, general rules "are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they

can be in a complex society, by their power, immediate or remote, over those who make the rule." *Bi-Metallic*, 239 U.S. at 445. The classification decision affects the public generally. Stratton's interest may be different from that of other members of the public, but it has no right to turn a public issue into a private contest. See *Hercules, Inc. v. EPA*, 598 F.2d at 118 (the fact that plaintiff is the only producer of a chemical subject to an EPA water quality standard does not give it a right to an adjudicatory hearing on the standard); *Anaconda Co. v. Ruckelshaus*, 482 F.2d 1301, 1306 (10th Cir. 1973) (the fact that plaintiff alone is involved with emission standard is not conclusive since "there are many other interested parties and groups who are affected and are entitled to be heard"). Nor does Stratton have the right to redirect the focus from the public interest factors specified by the Legislature to how reclassification will affect its private development plans.

We have no difficulty concluding that a reclassification determination under 10 V.S.A. § 1253 is a policy-based rule of general applicability, and not an adjudication of particular parties' rights. See *Ratepayers Coalition of Rochester v. Rochester Electric Light & Power Co.*, 153 Vt. 327, 332, 571 A.2d 606, 609 (1989). The Legislature is free, if it chooses, to require that reclassification decisions be made pursuant to more formal, trial-type procedures. See generally, Shapiro, *The Choice of Rulemaking or Adjudication in the Development of Administrative Policy*, 78 Harv. L. Rev. 921 (1965). Nothing in the federal constitution, however, compels it to do so.

Since the superior court dismissed the case on the pleadings alone, we can affirm the dismissal on the grounds that Stratton failed to state a claim upon which relief could be granted. See *Gochey v. Bombardier, Inc.*, 153 Vt. 607, 613, 572 A.2d 921, 925 (1990) (decision of trial court may be affirmed on any legal ground). We conclude that even if we view the record and the evidence before the Board in the light most favorable to Stratton, it could not prevail on its due process argument as a matter of law. See *Bargman v. Brewer*, 142 Vt. 367, 370, 454 A.2d 1253, 1256 (1983). The superior court did not err in dismissing the action.

*Affirmed.*