2005 VT 79

# Lake Bomoseen Association v. Vermont Water Resources Board

[886 A.2d 355]

No. 04-220

Present: **Dooley, Johnson, Skoglund and Reiber, JJ., and Allen, C.J. (Ret.),** Specially Assigned

Opinion Filed July 15, 2005

Motion for Reargument Denied August 19, 2005

*Jon T. Anderson* of *Burak Anderson & Melloni, PLC*, Burlington, for Plaintiff-Appellant.

*William H. Sorrell*, Attorney General, and *S. Mark Sciarrotta*, Assistant Attorney General, Montpelier, for Defendant-Appellee.

*Kelly D.H. Lowry* of *Johnson, Smith, Hibbard & Wildman*, Spartanburg, South Carolina, for Intervenor-Appellees Vermont Natural Resources Council and Rutland County Audubon.

¶ 1. **Dooley, J.** Lake Bomoseen Association appeals from a superior court decision dismissing its complaint challenging a wetlands reclassification determination by the Vermont Water Resources Board. The trial court ruled that it lacked jurisdiction because: (1)

the statutes governing wetlands reclassifications provide no express right to judicial review, and (2) the reclassification was a rulemaking rather than an adjudicative proceeding and therefore not reviewable by a traditional writ of certiorari. We affirm.

¶ 2. The legal and factual background to this appeal may be summarized as follows. Among its other statutory duties, the Water Resources Board (WRB) is required to "[a]dopt rules for the identification of wetlands which are so significant that they merit protection" based on certain statutorily defined functions, including contribution to the "quality of surface and groundwater through chemical action," control "the effects of erosion and runoff, filtering silt and organic matter," and use as habitat for fish, migratory birds, and wildlife. 10 V.S.A. § 905(7).[1] The WRB is also charged with the duty to "[a]ct on petitions" to designate specific wetlands as significant, and to "[a]dopt rules protecting wetlands which have been determined ... to be significant." *Id.* § 905(8), (9). Pursuant to this authority, the WRB has promulgated Wetland Rules creating three categories of wetlands, denominated Class One, Class Two, and Class Three. Vermont Wetland Rules § 4.1, 6 Code of Vermont Rules 12 004 056-10 (2002) [hereinafter VWR].

¶ 3. Under the rules, all wetlands shown on the National Wetlands Inventory (NWI) Maps published by the United States Fish and Wildlife Service are presumptively significant and designated as Class Two. *Id.* § 4.2(b); see also *Sec'y, Agency of Natural Res. v. Irish*, 169 Vt. 407, 413-14, 738 A.2d 571, 578 (1999) (upholding presumption that wetlands identified on NWI maps are significant). Unless otherwise provided by the WRB, a fifty-foot buffer zone is imposed around Class Two wetlands "to protect those functions that make a wetland significant." VWR § 4.3, at 12. Class One wetlands are defined as those wetlands that are "exceptional or irreplaceable in their contribution to Vermont's natural heritage and are therefore so significant that they merit the highest level of protection." *Id.* § 4.1(a), at 10. Unless otherwise designated by the WRB, a 100-foot buffer zone is established around Class One wetlands. *Id.* § 4.3, at 12. All other wetlands

---

[1] Under recent legislative amendments, the Environmental Board and the WRB were consolidated into one Natural Resources Board, with the authority to exercise the regulatory functions formerly exercised by the two boards, and all references to the WRB in the chapter dealing with wetlands regulation were accordingly amended to refer to the water resources panel of the Natural Resources Board. 2003, No. 115 (Adj. Sess.), § 16.

not determined to be significant are categorized as Class Three. *Id.* § 4.1(c), at 10.

¶ 4. Permitted uses within Class One and Class Two wetlands and their surrounding buffer zones are limited, and all other uses require a conditional use determination by the Agency of Natural Resources, appealable to the WRB. *Id.* §§ 6.2, 6.3, 8.6-8.7, at 20-22, 28-29; see also 10 V.S.A. § 905b(18) (authorizing issuance or denial of conditional use determinations).

¶ 5. The rules establish a procedure for interested persons and organizations to petition the WRB for the reclassification of any wetland to a higher or lower classification, or for modification of the buffer zone associated with a significant wetland. VWR § 7.1(a), at 23. Upon the filing of such a petition, the WRB must provide public notice, allow at least thirty days for the filing of public comments, hold a public hearing upon request, and issue an "[a]dministrative determination[]" ruling on the request for reclassification or modification. *Id.* § 7.4(a), at 24; Water Resources Board Rules of Procedure, Rule 15.(D), 6 Code of Vermont Rules 12 004 001-16 (2002).

¶ 6. The instant proceeding commenced in July 2002, when the Vermont Natural Resources Council and the Rutland County Audubon Society filed a petition with the WRB seeking reclassification of an area known as the Lake Bomoseen Wetland from Class Two to Class One, as well as an expansion of the presumptive buffer zone around the wetland from 50 to 100 feet. The WRB received over eighty written comments in response to the petition, including those of plaintiffs Lake Bomoseen Association, comprised of property owners on or near Lake Bomoseen. The WRB held a public hearing in September 2002, conducted a site visit, reopened the public comment period on the limited question of whether to vary the presumptive 100-foot buffer around Class One wetlands, and issued an administrative determination, containing extensive findings and conclusions, in February 2003. The WRB voted unanimously to reclassify the wetland from Class Two to Class One, and determined, with one member dissenting, to impose the presumptive 100-foot buffer zone in all but one small area at the southeastern portion of the wetland known as Ledgemere Point, where preexisting development reduced the wetland's significance and thus warranted retention of the 50-foot zone. The dissenting member

(the WRB chair) would have retained the 50-foot zone along a larger portion of the eastern side of the wetlands.[2]

¶ 7. The Association then filed a complaint in the Rutland Superior Court, pursuant to Rule of Civil Procedure 75, challenging the administrative determination as arbitrary and a violation of due process. The WRB moved to dismiss the complaint, arguing that the court lacked jurisdiction under Rule 75, and that the Association lacked standing. In April 2004, the court issued a written decision, granting the motion. Under Rule 75, "[a]ny action or failure or refusal to act by an agency of the state or a political subdivision thereof ... that is not appealable under Rule 74 may be reviewed in accordance with this rule if such review is otherwise available by law." V.R.C.P. 75(a). The court noted that the statutes dealing with the identification and protection of wetlands are silent on the right to judicial review, and therefore concluded that the WRB's decision was not appealable under Rule 74, which applies only when a party "is entitled by statute" to seek review of an agency decision. V.R.C.P. 74(a).

¶ 8. As to whether judicial review was "otherwise available by law" under Rule 75, the court noted that the phrase has been interpreted to include situations where review was formerly available under the traditional prerogative writs at common law, such as certiorari, mandamus, and prohibition. See *Vt. State Employees' Ass'n v. Vt. Criminal Justice Training Council*, 167 Vt. 191, 195, 704 A.2d 769, 771 (1997) ("When ... legislation is silent on whether review is available, we have permitted appeal under Rule 75 so long as review would have been available under any one of the extraordinary writs, such as mandamus, scire facias, prohibition, quo warranto, and certiorari."). The court rejected mandamus and prohibition, observing that "no official is being requested to perform or restrain from performing a particular act." This left, in the court's view, certiorari — the method traditionally used to "review judicial action of inferior courts and

---

[2] The WRB subsequently denied a motion to alter filed by Alan and Claudia Wulff, property owners on the western portion of the wetland, seeking to reduce the buffer zone adjacent to their property from 100 to 50 feet. The WRB chair again filed a short dissent. The Wulffs filed a separate appeal with the Rutland Superior Court, pursuant to Rule 75. Noting that its review of agency determinations was limited to whether the WRB had acted arbitrarily, unreasonably, or contrary to law, and that agency findings within its area of expertise are entitled to great deference, the court found that the WRB decision was reasonable and well founded, and therefore affirmed. That decision is the subject of a separate appeal to this Court. *In re Lake Bomoseen Wetland*, No. 2004-002 (Vt. filed Jan. 2, 2004).

tribunals," *State v. Forte*, 159 Vt. 550, 554, 624 A.2d 352, 355 (1993) — as the only relevant writ.

¶ 9. The court then proceeded to analyze whether the reclassification proceeding was adjudicative in nature, in which case the predicate for Rule 75 review would be satisfied, or quasi-legislative, in which case certiorari review, and by extension Rule 75 jurisdiction, would be precluded. The court looked to *In re Stratton Corp.*, 157 Vt. 436, 600 A.2d 297 (1991), as the controlling decision in this area. Applying the factors identified in *Stratton* for assessing whether an agency action is rulemaking or adjudication, the court concluded that the WRB's administrative determination was not quasi-judicial, and therefore that an appeal in the nature of certiorari was unavailable. Accordingly, the court found that it lacked jurisdiction, and dismissed the complaint without addressing the parties' remaining claims. The Association then filed this appeal.

¶ 10. According to the Association, the trial court erred in dismissing the appeal for lack of jurisdiction based on its finding that the administrative determination reclassifying the Lake Bomoseen Wetland was a rulemaking proceeding rather than an adjudication.[3] The statutory language leaves little doubt, however, that the Legislature intended the wetlands classification process to be a rulemaking proceeding. As noted, the statute directs the WRB to "[a]dopt rules for the identification of wetlands which are so significant that they merit protection," and further to "[a]dopt rules protecting wetlands which have been determined ... to be significant." 10 V.S.A. § 905(7), (9); see *Stratton*, 157 Vt. at 442, 600 A.2d at 300 (statutory language labeling reclassification of streamwaters as "rules" indicates legislative intent to treat proceeding as rulemaking). Moreover, although the WRB's Rules of Procedure characterize reclassifications as "administrative determinations" rather than as rulemaking per se, such determinations are specifically distinguished from "contested case proceedings." Water Resources Board Rules of Procedure, Rule 15; see *Stratton*, 157 Vt. at 442, 660 A.2d at 300 (considering streamwater reclassification designations as "contested cases" supported finding that they were not intended to be adjudicative proceedings).

¶ 11. Thus, the question before us is whether, notwithstanding this legislative choice, the reclassification process is so inherently adjudica-

---

[3] The Association does not challenge, and the dissent does not question, the trial court's ruling that quasi-legislative determinations are not otherwise appealable under Rule 75.

tive that due process requires trial procedures. See *Bi-Metallic Inv. Co. v. State. Bd. of Equalization*, 239 U.S. 441, 445-46 (1915) (explaining that due process requirements apply to agency determinations only if adjudicative, rather than generalized or legislative in nature). To address this question we turn to *Stratton*. The issue there did not specifically concern jurisdiction — Stratton's appeal from the WRB's reclassification of a watercourse was expressly authorized by statute — but whether, as Stratton claimed, its due process rights were violated by the WRB's use of informal rulemaking or quasi-legislative procedures, rather than a "trial-type hearing to adjudicate disputed facts." *Id.* at 440, 600 A.2d at 299. *Stratton* identified three factors for assessing whether agency action is in the nature of a rulemaking proceeding:

> (1) whether the inquiry is of a generalized nature, rather than having "a specific, individualized focus"; (2) whether the inquiry "focuses on resolving some sort of policy-type question and not merely resolution of factual disputes"; and (3) whether the result is of "prospective applicability and future effect."

*Id.* at 443, 600 A.2d at 301 (quoting 1 C. Koch, Administrative Law & Practice § 2.3, at 61-62 (1985)).

¶ 12. Applying these factors here, we have little difficulty affirming the trial court's finding that the wetlands reclassification is a rulemaking or legislative decision that does not demand the due process protections of a trial-type proceeding. First, as we observed of the stream reclassification proceeding in *Stratton*, the wetlands "reclassification inquiry involves examination of generalized issues beyond the scope of the immediate parties rather than issues of fact focused primarily on the rights and duties of these parties." *Id.* (citation omitted). The eleven statutorily defined functions that the WRB must consider in determining the significance of a wetland for classification purposes implicate the interests of all the state's citizens and its environment, not simply the interests of owners of property adjacent to the wetland. See *id.* (noting that the ten criteria for classification of streamwaters "relate to the interests of all citizens of the state"). Second, the wetlands reclassification determination turns on a policy judgment — based on a consideration and balancing of numerous scientific, economic, and aesthetic factors — concerning the level of protection to be afforded a public resource. See *id.* at 444, 600 A.2d at 301 (explaining that classification of stream involved "weighing" of

public benefits and private rights, and "[s]cientific, economic and technical factors ... not ... conducive to resolution in a trial-type hearing"). Finally, the wetlands reclassification decision is a rule of prospective applicability, affecting potential future land uses, not past conduct.

¶ 13. All of the pertinent factors thus support the conclusion that the wetlands reclassification was a rulemaking or legislative determination rather than an adjudication. The fact that the WRB applied statutorily defined criteria to its decision does not, as the Association argued, compel a different result. See *id.* at 443, 600 A.2d at 301 (finding that stream reclassification was legislative where WRB applied ten policy-based statutory criteria to decision). Nor does the decision's disproportionate affect on the adjacent landowners require a finding that it was adjudicative. See *id.* at 444-45, 600 A.2d at 301-02 (where stream reclassification affected public generally, fact that principal landowner's interest may be greater than other members of the public does not "turn a public issue into a private contest"). Nor, finally, does reduction of the presumptive 100-foot buffer for a relatively small portion of the wetlands imply that the decision is necessarily judicial in nature. The decision to reduce the buffer zone was based on the same policy-based criteria as the decision to upgrade the wetlands classification generally; in reducing the buffer zone around Ledgemere Point, the WRB concluded that the balance of factors, particularly the impact on wildlife habitat and aesthetic functions, dictated a different result in this more developed area. Accordingly, we discern no basis to disturb the court's conclusion that the wetlands reclassification proceeding was not an adjudication, and therefore not subject to certiorari review.

¶ 14. Our conclusion that the reclassification proceeding was not adjudicative in nature disposes of the Association's related claim that it was improperly denied certain due process protections, including the right to confront and cross-examine witnesses, otherwise required of an adjudicative proceeding. Nevertheless, the dissent would grant judicial review of wetland reclassification determinations based on a theory not argued by the Association — that a sentence in a WRB wetland rule creates a right of review under Rule 75. The dissent suggests that the Legislature acquiesced to judicial review of reclassification determinations because the legislative committee on administrative rules did not object to the statement of judicial review contained in the Board rule. The dissent makes this presumption even though the statute creating the legislative committee explicitly states

that the committee's failure to object to a rule "is not an implied legislative authorization of [the rule's] substantive or procedural lawfulness." 3 V.S.A. § 842(b).

¶ 15. The dissent's position is unsupportable for several reasons. The WRB rule that the dissent relies on does not purport to create review jurisdiction and, of course, could not do so even if the WRB intended that result. Further, even assuming that the WRB could create jurisdictional review, the Legislature did not acquiesce to judicial review of wetland reclassification determinations merely because the legislative committee on administrative rules failed to object to a sentence on judicial review contained in the WRB rule. Finally, even if we were to assume that the Legislature acquiesced to the WRB rule, it would be acquiescing only to the unremarkable proposition that judicial review is available as provided in Rule 75, which, as the dissent concurs, is no review at all.

¶ 16. The WRB rule that the dissent relies on is § 9 of the VWR, which is entitled "APPEALS" and provides as follows:

> Any act or decision of the Secretary under these rules may be appealed within 30 days to the Board pursuant to 10 V.S.A. Section 1269 in accordance with the Board's Rules of Procedure. Any final decision of the Board on an appeal may be appealed as provided for in 10 V.S.A. Section 1270.
>
> Except as provided for in 3 V.S.A. Chapter 25, appeals of any Board decision related to a petition filed and decided under Section 7, may be reviewed by the applicable court as provided for in Rule 75 of the Vermont Rules of Civil Procedure.

VWR § 9, at 30. Specifically, the dissent relies upon the sentence in the second paragraph, which references § 7 of the rules — the section governing wetland reclassification petitions.[4] That sentence states that

---

[4] Neither the parties nor the dissent has claimed that review is provided by the first paragraph, but it is still instructive to look at that paragraph. Section 1270 of Title 10 allows appeals to the Supreme Court from "any final order or decision of the board pursuant to this subchapter." Section 1269 provides a commensurate right to appeal to the WRB from decisions of the Secretary of the Agency of Natural Resources. The subchapter referenced in § 1270 is subchapter 1 of chapter 47 of Title 10, titled "Water Pollution Control," which includes §§ 1250-1284. The only section of the subchapter that relates to wetlands is § 1272, which allows the agency to issue orders that address violations of wetland rules. Such actions are, of course, adjudicative in nature and do not concern petitions for reclassification of wetlands, which are authorized in a separate

appeals of any WRB decision under § 7 "may be reviewed by the applicable court *as provided for in Rule 75 of the Vermont Rules of Civil Procedure." Id.* (emphasis added).

¶ 17. As the dissent recognizes, the WRB cannot create or extend court jurisdiction through its rules. Hence, the WRB was simply stating its understanding of available judicial review. For adjudicative decisions under Title 10, chapter 47, subchapter 1, the statement is unremarkable and clearly correct. For classification decisions, the WRB merely referred to Rule 75 as providing the availability of review. The fact that the WRB may have incorrectly assumed that judicial review of wetland reclassification determinations is available under Rule 75 is hardly surprising. Rule 75 is intended to replace the common law prerogative writs of certiorari, mandamus, scire facias, quo warranto and prohibition. As our decisions demonstrate, the availability and scope of these writs, if available, are not obvious. See, e.g., *Forte*, 159 Vt. at 554-57, 624 A.2d at 355-57. The WRB may simply have wanted to err on the side of allowing judicial review. The dissent would, however, turn the WRB's misunderstanding over the applicability of Rule 75 into an affirmative assertion of judicial review irrespective of what is otherwise authorized by law. This is not a tenable interpretation of VWR § 9 because it assumes that the WRB intended to create review jurisdiction by rule, an action plainly beyond its power.

¶ 18. The dissent nonetheless would find superior court jurisdiction, noting that the Legislature has provided for judicial review of quasi-legislative stream reclassifications. This reasoning is not persuasive. The fact that the Legislature has explicitly provided for judicial review with respect to other quasi-legislative administrative determinations demonstrates, if anything, that the Legislature knows how to provide for judicial review when it wants but did not do so with respect to wetland reclassification decisions. Indeed, this point is illustrated in 10 V.S.A. § 905, which sets forth the WRB's duties and powers with respect to water resources management. While § 905(7)-(9) allow the WRB to adopt rules regarding wetlands without any provision for superior court review of those rules, § 905(2) authorizes the WRB to adopt rules governing the surface levels of lakes and ponds *and* expressly provides that aggrieved persons can appeal those rules to the superior court.

---

subchapter. Therefore, the appeal provisions in §§ 1269 and 1270, by their own terms, do not allow for review of a wetland reclassification.

¶ 19. In essence, the dissent would hold that the Legislature can create a jurisdictional authorization by silence, a novel theory for which it offers no support. Even assuming that the theory might be valid in another context, it is not valid here for several reasons. First, VWR § 9 does not purport to create or extend judicial review under Rule 75; rather, it merely states that judicial review is available as provided in Rule 75, which, as the dissent agrees, is no review at all.

¶ 20. Second, this is not a case of deferring to the WRB's construction of a statute over which the Legislature has given it governing authority. Rather, to the extent that the WRB is interpreting anything, it is interpreting Rule 75, a court rule in which it has no expertise or governing authority. See 2B N. Singer, Sutherland on Statutes and Statutory Construction § 49:05, at 83 (6th ed. 2000) ("Deference does not extend to whether the agency's decision is subject to judicial review, as that question is within the court's own expertise."); cf. *In re Cent. Vt. Pub. Serv. Corp.*, 172 Vt. 14, 19-20, 769 A.2d 668, 673 (2001) (administrative agencies are not entitled to deference with respect to their interpretation of the applicability of judicially created doctrines).

¶ 21. Third, as noted, there is no acquiescence on the part of the Legislature here, and even if there was, it would be acquiescence only to VWR § 9's acknowledgment that judicial review is available *as provided in Rule 75*. Although some courts have held that legislative inaction following a contemporaneous interpretation is evidence of that legislature's intent to adopt the interpretation, "[t]he acquiescence of the legislature seems to be of small consequence where the statute or its contemporaneous interpretation was not called to the legislature's attention." Sutherland, *supra*, § 49:10, at 112-14, 117 ("Legislative inaction has been called a 'weak reed upon which to lean' and a 'poor beacon to follow' in construing a statute."). The dissent presumes that the Legislature knew of the review issue contained in VWR § 9 merely because the Administrative Procedure Act (APA) created a legislative committee on administrative rules, 3 V.S.A. § 817, and gave that committee the right to object if a rule "is beyond the authority of the agency" or "contrary to the intent of the legislature," *id.* § 842(b)(1), (2). This presumption is not supportable, given that the APA expressly states that the committee's failure to object to a rule should not be construed to show legislative acquiescence: *"The failure of the committee to object to a rule is not an implied legislative authorization of its substantive or procedural lawfulness." Id.* § 842(b) (emphasis added).

¶ 22. Moreover, even if the APA did not expressly foreclose legislative acquiescence based on the committee's failure to object to a rule, the situation here is a far cry from *Town of Killington v. State*, 172 Vt. 182, 776 A.2d 395 (2001), upon which the dissent relies. In *Killington*, 172 Vt. at 192-94, 776 A.2d at 403-04, we accepted as evidence of legislative intent an official contemporaneous letter from a legislative committee explicitly established by the Legislature to implement the statute being construed and to oversee the rules and .policies of the agencies and school districts governed by the statute. Here, in contrast, the dissent would presume legislative acquiescence simply because the administrative rules committee did not object to a single sentence in the wetland rules stating that review of the WRB's decisions regarding wetland reclassification petitions is available as provided in Rule 75.

¶ 23. The other case relied upon by the dissent, *Vincent v. Vermont State Retirement Board*, 148 Vt. 531, 536 A.2d 925 (1987), marks the proper limit in presuming a right to review when that right is not made explicit. Unlike the instant case, *Vincent* concerned judicial review of an adjudicative administrative determination. Indeed, *Vincent* would be an unremarkable example of review of an adjudicative decision under Rule 75, except that the State argued that the language of the governing statute — that the retirement board's decision will allow an offset "in such manner as the retirement board shall determine" — gave the board unreviewable discretion. *Id.* at 534, 536 A.2d at 927-28. We found the language ambiguous, however, and held that, in the face of the ambiguity, we would err on the side of allowing judicial review under Rule 75. *Id.* Here, in contrast, there is no right to judicial review, and no ambiguous legislative language to overcome. Instead of refusing to find in uncertain legislative action a barrier to traditional common-law review, which is the holding of *Vincent*, the dissent would find in legislative silence the creation of review where the common law would deny it. We find nothing in the decision that would support such a contrary application of judicial review.

■ ¶ 24. To sum up, the Legislature has not provided for review of wetland reclassification determinations, and the WRB rule stating that review is available as provided in Rule 75 does not create or extend review under Rule 75, which does not provide for review of such determinations. Further, the Legislature's silence in the face of the WRB rule is not binding acquiescence, and, even if it is, the Legislature would be acquiescing only to the statement that Rule 75 controls the scope of review of wetland reclassification determinations. Ac-

cordingly, the superior court properly dismissed the Association's appeal for lack of jurisdiction.

*Affirmed.*

¶ 25. **Reiber, J.,** concurring and dissenting. I concur in the Court's holding that the decision of the Water Resources Board to reclassify the Lake Bomoseen Wetland is a rulemaking rather than an adjudicative proceeding. I do not agree, however, that this conclusion necessarily disposes of the ultimate question of whether the decision is appealable. The right to "a certain remedy, by having recourse to the laws" is of constitutional dimension in Vermont. Vt. Const. ch. I, art. 4. The Legislature may, to be sure, define and limit the legal remedies available to litigants, but where — as here — we interpret a statute to bar virtually all right of judicial access and review, the evidence of such an intent should be clear, conclusive, and unambiguous. This is not such a case. Accordingly, I respectfully dissent.

¶ 26. Unlike other decisions of the Water Resources Board (WRB), such as those dealing with stream reclassifications and discharge permits, the chapter governing wetlands classifications contains no express provision affording a right to judicial review. Cf. 10 V.S.A. § 1270 (granting persons aggrieved by decisions of WRB under subchapter dealing with stream classifications and waste permits appeal to Supreme Court). The Vermont Wetland Rules promulgated by the WRB specifically provide, however, that administrative wetlands reclassifications "may be reviewed by the applicable court as provided for in Rule 75 of the Vermont Rules of Civil Procedure." Vermont Wetland Rules § 9, 6 Code of Vermont Rules 12 004 056-30 (2002) [hereinafter VWR]. Under the Administrative Procedure Act, these rules were reviewed by a legislative committee authorized to object on the grounds that they were beyond the WRB's authority or contrary to the Legislature's intent. 3 V.S.A. § 842(b). There is no evidence of such an objection, however, and VWR § 9 authorizing appeal of wetlands reclassifications to the superior court under Rule 75 has remained in effect since its enactment.

¶ 27. While the committee's acquiescence in the rule may not prove an intent to endorse its substantive terms, see 3 V.S.A. § 842(b) (clarifying that committee's failure to object "is not an implied legislative authorization of its substantive or procedural lawfulness"), the fact remains that VWR § 9 providing for judicial review of wetlands reclassifications triggered no apparent legislative red flags, adverse comment, or reservations. One may question, to be sure, whether the

committee was actually aware that the VWR § 9 provided a right to judicial review where the statutory scheme was otherwise silent. If we are to be realistic, however, one must also question whether the absence of an express statutory right to judicial review in the chapter governing wetlands classifications was a conscious legislative choice or merely an inadvertent oversight. If the Legislature had actually intended to bar judicial review of wetlands reclassifications it could easily have expressed that intent in a clear and straightforward manner — as it has elsewhere — by simply stating that the WRB's wetland classification decisions are final and are not subject to judicial appeal. See, e.g., 32 V.S.A. § 5929(b)(3) (providing that decisions of emergency board granting or denying new jobs tax credit certification "shall be final, and shall not be subject to administrative or judicial appeal"); *id.* § 5930a(g) (providing that decisions of Vermont Economic Progress Council granting or denying applications for economic incentives "shall be final and not subject to judicial review"). The Legislature failed to do so. Confronted with this combination of administrative mandate and legislative silence, I am prepared, at the least, to find evidence of ambiguity.

¶ 28. When the right to appeal may fairly be characterized as ambiguous, courts are generally loathe to deny such a right, even when the governing statute is silent. Our decision in *Vincent v. Vermont State Retirement Board*, 148 Vt. 531, 536 A.2d 925 (1987), is instructive in this regard. There, plaintiff filed a complaint seeking judicial review of a Retirement Board decision offsetting plaintiff's workers' compensation benefits against his disability retirement benefits. The Board argued that the court lacked jurisdiction, noting that the statute afforded plaintiff no express right to judicial review. We rejected the argument, however, observing that the Legislature could have explicitly denied judicial review (citing a former section of the workers' compensation law which provided that "decisions of the board shall be final"), but "did not express such an intent in the legislation establishing the Vermont state retirement system." *Id.* at 533-34, 536 A.2d at 927-28. Citing Chapter I, Article 4 of the Vermont Constitution that "[e]very person within this state ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which one may receive in his person, property or character," we expressed "hesita[tion] to interpret arguably ambiguous legislation as foreclosing judicial review of administrative agency decisions." *Id.* at 534 n.2, 536 A.2d at 927 n.2. Accordingly, we held that the Board decision was subject to review. *Id.* at 534, 536 A.2d at 928.

¶ 29. Here, the statute is similarly silent on the subject of judicial review of wetlands reclassifications. Unlike *Vincent*, however, the agency authorized to interpret and apply the statute has explicitly authorized judicial review, and the Legislature has not seen fit to overrule that decision. Although an agency may not, of course, exceed the powers expressly granted or necessarily implied by the enabling legislation, "we generally defer to interpretations of enabling legislation by an administrative agency." *Perry v. Med. Practice Bd.*, 169 Vt. 399, 403, 737 A.2d 900, 903 (1999); see also *Dutton v. Dep't of Soc. Welfare*, 168 Vt. 281, 284, 721 A.2d 109, 111 (1998) (noting that "where a statute is silent as to a specific issue, we will defer to an agency's interpretation" if based on permissible construction). Furthermore, while questions of judicial review may not lie within the precise expertise of the WRB, we note again that VWR § 9 was at least subject to legislative oversight, and has not been questioned or overruled. See *Town of Killington v. State*, 172 Vt. 182, 194, 776 A.2d 395, 404 (2001) (citing *United Hosp. Ctr., Inc. v. Richardson*, 757 F.2d 1445, 1451 (4th Cir. 1985), that administrative regulations presented to legislative oversight committee by the administering agency "without disapproval are entitled to considerable weight as expressive of legislative purpose").

¶ 30. Under these circumstances, therefore, I agree with the Court's observation in *Vincent* that we should be "hesitant to interpret" ambiguous legislation as "foreclosing judicial review." *Vincent*, 148 Vt. at 534 n.2, 536 A.2d at 927 n.2 To be sure, *Vincent* involved a traditionally adjudicative decision rather than — as in this case — a rulemaking or quasi-legislative determination. This fact alone does not, however, preclude judicial review. Indeed, the Legislature has provided for appeals to this Court from stream reclassifications, which — as we held in *Stratton* — are also quasi-legislative in nature. *In re Stratton Corp.*, 157 Vt. 436, 445, 600 A.2d 297, 302 (1991); see 10 V.S.A. § 1270 (providing for appeals of stream reclassifications to Supreme Court). Furthermore, we may be assured that any possible error in interpreting the statute to allow for judicial review of wetlands reclassifications may be addressed through legislative amendment or clarification.

¶ 31. Accordingly, I would reverse the trial court judgment dismissing the complaint, and hold that the Association is entitled to judicial review to determine whether the WRB's decision was a clear and arbitrary abuse of authority. More specifically, the question for the trial court on remand — should it reach the issue — would be whether the WRB committed a clear and manifest abuse of its statutory duty

by reclassifying the Lake Bomoseen Wetland based on criteria which the Association claims do not adequately distinguish Class One from Class Two wetlands, in violation of its due process rights.[5]

¶ 32. I am authorized to state that Retired Chief Justice Allen joins in this dissent.

---

[5] Of course, the trial court would not need to address this question unless it determines that the Association had standing to bring the claim.