2008 VT 84

**SUNSET CLIFF HOMEOWNERS ASSOCIATION and Strathmore Homeowners Association v. WATER RESOURCES BOARD**

[958 A.2d 652]

No. 06-477

¶ 1. June 10, 2008. Sunset Cliff Homeowners Association and Strathmore Homeowners Association ("Sunset Cliff") appeal from a superior court order con-

cluding that they are entitled only to "on the record" review — via a declaratory-judgment action — of a Water Resources Board decision declining to reclassify certain wetlands in Burlington. We conclude that the trial court erred in determining that it had jurisdiction to consider Sunset Cliff's declaratory-judgment action.

¶ 2. We first briefly summarize the legal landscape surrounding wetlands in Vermont. When this litigation began, the Water Resources Board (WRB) — now subsumed within the Natural Resources Board, see 2003, No. 115 (Adj. Sess.), § 16 — was charged by statute to "[a]dopt rules for the identification of wetlands which are so significant that they merit protection" based on certain enumerated characteristics. 10 V.S.A. § 905(7).[1] The WRB also had the statutory duty to consider and act on petitions to designate specific wetlands as significant and to adopt "rules protecting wetlands which have been determined . . . to be significant." *Id.* § 905(8), (9). In order to carry out these mandates, the WRB promulgated the Vermont Wetland Rules (VWR), which create three "Classes" of wetlands: I, II, and III. See VWR § 4.1, 6 Code of Vermont Rules 12 004 056-10 (2002).

¶ 3. The VWR establish a presumption that wetlands shown on the National Wetlands Inventory (NWI) maps are "significant" and are therefore designated as Class Two wetlands. VWR § 4.2(b). The wetland at issue in this case does not appear on the NWI map. Accordingly, it is a Class Three wetland, and does not receive the same protection under the rules as do Class One and Two

---

[1] The land-use statutes now in effect endow the water-resources panel with similar power to adopt wetland rules. See 10 V.S.A. § 6025(d)(5) (2006). The new statutes were not in effect during the proceedings before the WRB or the superior court in this case, and thus have no impact on our decision.

wetlands. See VWR § 4.3 (mandating 100-foot buffer zones around Class One wetlands and 50-foot buffers around Class Two wetlands).

¶ 4. Certain parties may, under the VWR, petition the WRB to reclassify wetlands, determine their boundaries, and determine whether the default buffer zones are adequate or must be modified. VWR § 7.1. Upon receipt of such a petition, the WRB is required to provide notice to certain enumerated people and by publication. VWR § 7.4. "Such notice shall provide not less than 30 days within which to file written comments or to request that the [WRB] hold a public hearing on the petition." VWR § 7.4(a). If a public hearing is requested, the WRB may hold one, but is not required to under the rules. While a petition is pending, the WRB shall temporarily designate a wetland as significant if it finds that "there is a reasonable likelihood that the wetland in question may be significant . . . [for] one or more functions identified in the petition" and that the "failure to grant a temporary designation is likely to result in substantial or irreversible harm to one or more of the functions specified in Section 5." VWR § 7.5. When the WRB denies a reclassification petition, it is required only to provide a "written explanation of [its] decision." VWR § 7.6; see also 3 V.S.A. § 806 (same).

¶ 5. This litigation began in June 2003, when Sunset Cliff petitioned the WRB to reclassify approximately forty acres of Class III wetlands on Sunset Cliff Road in Burlington. While the petition was pending, the WRB temporarily designated the wetland as Class II pursuant to VWR § 7.5, finding that there was a "reasonable likelihood" that the wetland would be found to be significant, and that failure to grant the temporary designation was likely to result in harm to the wetland. Later, based on representations made by intervenor Keystone — the developer that holds a ninety-nine-year lease on the parcel at issue — that it would minimize its activities in the wetland pending resolution of the petition, the temporary designation was withdrawn.

¶ 6. The WRB then held a public hearing on the reclassification request. That hearing, together with written filings from the parties, a site visit, and input from the Agency of Natural Resources, appears to have formed the basis for the WRB's final decision on the reclassification petition, issued in January 2004. In that decision, the Board faced three issues:

(1) Whether to reclassify the Sunset Cliff Wetland from Class Three to Class Two, based on an evaluation of its functions;

(2) What buffer zone(s) should be imposed to protect any functions that are significant; and

(3) Whether to delineate the boundaries of the Sunset Cliff Wetland.

The Board decided, based on several pages of factual findings, that the wetland did not satisfy the "Functional Criteria for Evaluating a Wetland's Significance" enumerated in VWR §§ 5.1-5.10. Because the Board concluded that the wetland did not merit reclassification and would therefore remain a Class III wetland, entitled to no particular protection, the Board neither evaluated the need for buffer zones nor delineated the boundaries of the wetland. The decision issued on January 23, 2004.

¶ 7. In February 2004, Sunset Cliff filed suit against the WRB in Chittenden Superior Court, "pursuant to V.R.C.P. 74

and [the court's] general jurisdiction." The complaint sought to "stay and nullify the Order of the [WRB] determining not to reclassify the Wetlands; [to] find that the Wetlands are properly classified as Class II; and [to] make a proper delineation of their boundaries." The complaint did not seek a declaratory judgment under 3 V.S.A. § 807. The WRB moved to dismiss, arguing that V.R.C.P. 74 allows appeals only when "a party is entitled *by statute* to seek review of, or appeal from, a [board or agency] decision." In a sur-reply to a memorandum in support of the motion to dismiss, Sunset Cliff stated that it was "content to have this action treated as a challenge to a rulemaking procedure under 3 V.S.A. § 807, as the Board prefers." It is not clear from the record whether or how the Board expressed this preference.

¶ 8. In May 2004, the Chittenden Superior Court dismissed the action, holding that review was unavailable under Rules 74 and 75. The court noted that the proper venue for declaratory judgment actions was in Washington Superior Court, but went on to address the availability of a declaratory-judgment remedy. The court stated that Sunset Cliff had "fail[ed] to state which, if any, of their legal rights or privileges have been interfered with as a result of the Board's determination" such that review under § 807 would be appropriate. Further, the court held that "[t]o the extent that petitioners'[] rights and privileges are threatened by the reclassification, they are not subject to declaratory judgments but rather they are subject to the only method for protecting such rights in a complex society, through the power of citizens over legislative bodies." Accordingly, the court concluded that Sunset Cliff's "claim to a declaratory judgment under § 807 is unfounded and unavailable," and dismissed the complaint. Sunset Cliff did not appeal from the dismissal.

¶ 9. Instead, several months later, Sunset Cliff brought a declaratory-judgment action in the Washington Superior Court under § 807. That complaint — filed in September 2004 — challenged "[t]he Board's wrongful refusal to reclassify [the] wetlands" at issue. The complaint alleged that the Board's decision "ignores facts and is inconsistent with the law," and that the decision "misinterprets and misapplies the Wetland Rules." By way of relief, the complaint asked that the superior court "issue a judgment declaring that the wetland on the Site [is] properly classified as Class II and make a proper delineation of its boundary."

¶ 10. The State moved to dismiss on two grounds: (1) that the Chittenden decision was res judicata as to the § 807 action, and (2) that the Board's decision *not* to reclassify the wetland was not rulemaking, and hence not subject to § 807 even if res judicata did not bar the claim. The Washington Superior Court denied the motion on May 25, 2005. The court concluded that the denial of reclassification was rulemaking and was therefore reviewable "on the record" under § 807.

¶ 11. The State moved for reconsideration of the determination that the reclassification decision was rulemaking subject to a validity challenge under § 807. The State's first argument was that a decision declining to reclassify a wetland is not a "rule" and therefore is not subject to any review at all. Relying on the doctrine of the "law of the case," the court declined to revisit its earlier decision on this point. Second, the State argued that Sunset Cliff lacked standing to bring the action, even if declaratory judgments were generally available in this context.

¶ 12. The parties arrived at a stipulated judgment on October 25, 2006. Sunset Cliff agreed that "upon an 'on the record' review, the determination of the Water Resources Board . . . denying the petition . . . to reclassify the wetlands in

question from Class III to Class II is affirmed." Based on that stipulation, the only issue Sunset Cliff preserved for our consideration is whether the superior court erred in concluding that its review should be on the record. The WRB disputes this contention and raises two arguments in its cross-appeal: (1) the case is precluded by res judicata because the Chittenden court ruled that § 807 provided no avenue of relief; (2) the denial of the reclassification petition was not rulemaking and, therefore, § 807 "does not provide for review."

¶ 13. Our decision in *Lake Bomoseen Ass'n v. Vermont Water Resources Board*, 2005 VT 79, 178 Vt. 375, 886 A.2d 355, is instructive but not dispositive. In *Bomoseen*, we affirmed a superior court dismissal of an attempt to appeal, under Rules 74 and 75, a WRB wetland reclassification decision. We held that: (1) the wetland reclassification was rulemaking; (2) no appeal was available by statute or under V.R.C.P. 74; and (3) no appeal was "otherwise available by law" under V.R.C.P. 75. *Id.* ¶¶ 12-13, 24. Accordingly, we affirmed the trial court's dismissal for lack of jurisdiction. In *Bomoseen*, no relief was sought via § 807.

¶ 14. These facts present a question not answered explicitly in *Bomoseen*: whether a party aggrieved by a reclassification decision is entitled to de novo review of that decision via a declaratory judgment action when no such review is available via any other avenue of appeal. In answering the question, we are mindful of the limitations of the declaratory judgment action. "[T]he primary purpose of the [Declaratory Judgments Act] is to have a declaration of rights not already determined, not to determine whether rights already adjudicated were adjudicated properly." *United States v. Doherty*, 786 F.2d 491, 498 (2d Cir. 1986). "[D]eclaratory rulings are not appellate in nature, and cannot be resorted to as a substitute for, or in lieu of, proper appel-

late remedies." *In re D.A. Assocs.*, 150 Vt. 18, 19, 547 A.2d 1325, 1326 (1988).

¶ 15. The various statutes authorizing declaratory judgments allow parties to petition courts for declaratory relief as to matters within the jurisdiction of that court; the acts do not enlarge the jurisdiction of the courts. *Vt. State Employees' Ass'n v. Vt. Criminal Justice Training Council*, 167 Vt. 191, 194, 704 A.2d 769, 771 (1997). See also *Williams v. State*, 156 Vt. 42, 57, 589 A.2d 840, 849 (1990) (§ 807 does not enlarge court's jurisdiction). The superior court simply does not have jurisdiction to grant the relief Sunset Cliffs seeks in its complaint: a declaration that the WRB's determination not to reclassify the wetland was erroneous because the WRB decision "ignores facts[,] is inconsistent with [an unspecified] law [and] misinterprets the . . . Wetland Rules." "[T]he superior court is not a higher environmental agency entrusted with the power to make environmental law and policy de novo or with the power to apply the policy it develops to the facts it finds." *Conservation Law Found. v. Burke*, 162 Vt. 115, 126, 645 A.2d 495, 502 (1993).

¶ 16. That Sunset Cliff was petitioning the superior court for another bite at the reclassification apple is apparent on the face of the complaint. The complaint simply alleges that the wetland at issue "is entitled to protection as . . . Class II for at least [five] reasons." The listed reasons are merely five provisions of the Wetlands Rules; Sunset Cliff claims the wetland falls within those provisions, but the WRB found that it did not.

¶ 17. "If resort to declaratory judgment procedures can be had in every case where an applicant is dissatisfied with the ruling of the Board and the application of the general Zoning Ordinance to specific properties all over the City can be challenged, a condition of chaos can easily result." *Mayor & City Council of Baltimore v. Seabolt*, 123 A.2d 207, 212 (Md. 1956). The situation here is similar to that

in *Seabolt*, and we will not construe § 807 as broadly as Sunset Cliff urges.

¶ 18. This is not to say that the "applicability or validity" of rules can never be assayed via declaratory judgment. Rather, we simply hold that § 807 does not empower the courts to review the WRB's *application* of the wetland rules to particular parcels of land, in the manner of an appellate tribunal. Even the most cursory reading of the complaint reveals that Sunset Cliff has simply not brought the sort of challenge that is appropriate for resolution via declaratory judgment. Cf. *Driscoll v Austintown Assocs.*, 328 N.E.2d 395, 401 (Ohio 1975) (constitutional challenge, via declaratory judgment, to *applicability* of zoning ordinance; noting that "the declaratory judgment action is independent from the administrative proceedings; it is not a review of the final administrative order"). Rather, as the complaint makes clear, Sunset Cliff essentially seeks direct review of the Board's application of the rules, not a declaration of whether the wetland rules are *applicable at all* to the property in question, or of whether those rules are valid.

¶ 19. The proper use of the declaratory judgment vehicle is nicely illustrated in a Connecticut zoning case, *St. John's Roman Catholic Church Corp. v. Town of Darien*, 184 A.2d 42 (Conn. 1962). In that case, a church sought a zoning variance before the planning and zoning commission, and the application was denied. The church then simultaneously appealed the denial and filed a separate declaratory judgment action. The declaratory judgment action in *St. John's* did not challenge the commission's *application* of the zoning regulations to the subject property — that being the subject of the direct appeal, which was made available by statute — but rather challenged the constitutional *validity* of the regulations themselves, alleging among other things that the regulations in general impermis-

sibly burdened the free exercise of religion. *Id.* at 46. Sunset Cliff raised no such contentions in its declaratory-judgment complaint. The first sentence of the complaint avers that it is intended "to challenge the validity of rule making" but is otherwise virtually identical to the complaint filed earlier seeking direct review of the WRB decision.

¶ 20. Sunset Cliff's contention before the Washington Superior Court was that it was entitled to "de novo review" and should have the opportunity to build a record to show that the Board erred in declining to reclassify the wetland. The relief requested was "a judgment declaring that the wetland[s] on the site are properly classified as Class II and . . . a proper delineation of [their] boundary." The relief sought in the Chittenden complaint was, first, a finding "that the Wetlands are properly classified as Class II; and [second] . . . a proper delineation of their boundaries."

¶ 21. Section 807 simply does not provide a wetlands-reclassification proponent with de novo review of the factbound, policy-driven decisions of the Water Resources Board. Rather, § 807 defines a narrow procedural avenue by which litigants can challenge the applicability or validity of rules. Sunset Cliff did not truly seek to do either; rather, it sought review and reversal of the Board's decision not to grant the reclassification petition. It effectively asked the court to sit as a super-Board, to reassess the facts and apply the Wetlands Rules to them, and to grant relief that it had no power to give. The action should have been dismissed for lack of jurisdiction. Sunset Cliff's proper recourse is to the political process, not the courts.[2] See *Bi-Metallic*

---

[2] Because we conclude that the action in Washington Superior Court should have been dismissed on a different basis, we do not consider whether the claim might also have been barred by res judicata. Nor do

*Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915) ("Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule.").

*The order of the Washington Superior Court concluding that "on the record" review was available is vacated, and the appeal is remanded with instructions that it be dismissed.*

we consider the question of whether § 807 applies differently to denials of reclassification petitions than to grants of such petitions.