THE FIRST NATIONAL BANK OF ST. JOHNSBURY, EXR. *v.* MARIE J. LAPERLE.

(86 A2d 635)

January Term, 1952.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY and ADAMS, JJ., and CHASE, Supr. J.

Opinion Filed February 5, 1952.

*Witters, Longmoore & Akley* for the defendant.

*Arthur L. Graves* and *Frederick G. Mehlman* for the plaintiff.

JEFFORDS, J. This is a suit in equity for the specific performance of a contract. A decree for the plaintiff was entered and the case is here on exceptions of the defendant.

There is no need to set forth at length the various findings of the chancellor. Several will be discussed in the course of the opinion. For the present it need only be stated that the plaintiff is the executor of the will of Calvin E. Brown who at the time of his death owned a building located at 99 Eastern Ave. in the Village of St. Johnsbury and the personal property contained in the building. The plaintiff advertised the property for sale and the defendant came to the plaintiff and offered to purchase the property for $25,000.

The plaintiff in support of its claim that a contract of sale and purchase of the property was entered into between the parties offered what is designated as plaintiff's exhibit 3 which is in words and figures as follows:

> "RECEIVED of Mrs. Marie Laperle the sum of FIVE HUNDRED DOLLARS ($500.00), as a down payment on a $25,000 cash offer for the Calvin E. Brown store building located at 99 Eastern Avenue, St. Johnsbury, Vermont, and all stock in trade and fixtures located in said store.

It is understood that down payment will be refunded if offer is not acceptable to the Executor of the estate of Calvin E. Brown, deceased.

> The First National Bank
> St. Johnsbury, Vt.
> By L. B. Wood
> Cashier

Attest,
Mrs. Marie J. Laperle
St. Johnsbury, Vt.
June 2, 1950"

The defendant contends that she is entitled to a decree dismissing the plaintiff's bill on the ground that the contract upon which the plaintiff relies is one for the sale of lands and fails to comply with the Statute of Frauds. The section of the statute relied upon is V. S. 47, § 1716 which is as follows:

"An action at law or in equity shall not be brought in the following cases unless the promise, contract or agreement upon which such action is brought or some memorandum or note thereof is in writing, singed by the party to be charged therewith or by some person thereunto by him lawfully authorized." Sub-section V of section 1716 is as follows: "A contract for the sale of lands, tenements or hereditaments, or of an interest in or concerning them. Authorization to execute such a contract on behalf of another shall be in writing."

The first ground for the defendant's claim that the written instrument above set forth does not comply with the statutory requirements is that she did not "sign" the paper within the meaning of the statute for that over her name appears the word "attest". She says that "attest" means to bear witness to and cites many authorities in support of this statement. That this is the meaning ordinarily and usually to be given to this word we do not doubt. However, "attest" inherently betokens personal acts of authentication of genuineness. *Smith* v. *Curran,* 267 Mich 413, 255 NW 276, 94 ALR 766; *City Lumber Co.* v. *Borsuk,* 131 Conn 640, 41 A2d 775, 158 ALR 677; 7 CJS 691.

The signing required by the statute is a signature to the memorandum placed there with the intention of authenticating the writing. 37 CJS 696, 697; 49 Am Jur 684. If that is the intention

it is generally held that it is not essential that the signature be at the end of the memorandum in any particular place thereon. Anno. 112 ALR at 940 et seq. It may be in a place provided for the signature of a witness, Id. at 947; 49 Am Jur. 685.

That the defendant signed exhibit 3 is not and cannot be questioned as she testified on direct examination that she did. It is clear from all the circumstances that when she signed she did so not merely as a witness but as a party with the intention of authenticating the writing, or, as the chancellor found, that in affixing her signature under the word "attest" she indicated her agreement and confirmation of the arrangement. This finding amounts to one of intent to authenticate and was not a reforming of the exhibit as claimed by the defendant. The first ground of the defendant's claim in respect to the statute is without merit.

One ground of the defendant's objection to the admission of exhibit 3 and a copy thereof, plaintiff's exhibit 4, was that they contained no promise to sell or purchase but were merely receipts. Cases are cited in support of this claim. They have been examined and found not to be here in point as the writings there in question were merely receipts containing none of the requirements to satisfy the statute. In the present case the exhibits show a cash offer by the defendant to purchase the property therein described. This should be a sufficient answer to this claim of the defendant. Not only does it appear from the exhibits that there was a written offer by the defendant, the party here charged, but the offer was accepted orally, if not in writing, before it was withdrawn by the defendant. Thus this offer was a sufficient memorandum of the contract to satisfy the statute. *Kludt* v. *Connett,* 350 Mo 793, 168 SW2d 1068, 145 ALR 1014; Statute of Frauds, 49 Am Jur §§ 335 and 389. This ground in respect to the statute is also without merit.

The defendant objected to the admission of oral testimony to the effect that the directors of the plaintiff Bank approved of and accepted the offer of the defendant. The ground of the exception to the admission of this evidence here relied upon is in substance that it violates the rule set forth in *Adams* v. *Janes,* 83 Vt 334 at 336, 75 A 799, and in other cases, that a writing must contain such a description of the contract as will obviate the necessity of resorting to parol evidence to supply any term of the contract essential to its validity. None of our cases are cited by either party nor have we found any answering this claim. By the weight of authority, a written offer ac-

cepted by parol may constitute a sufficient memorandum of the contract, provided the person making the offer is the party to be charged. Statute of Frauds, 49 Am Jur §§ 335 and 389; 37 CJS 664; *Howe* v. *Watson*, 179 Mass 30, 60 NE 415; *McDonald* v. *Fernald*, 68 NH 171, 38 A 729; *Sanborn* v. *Flagler*, 9 Allen 474; *Ullsperger* v. *Meyer*, 217 Ill 262, 75 NE 482, 2 LRANS 221; *Kludt* v. *Connett, supra.*

■ The purpose of the statute of frauds is to prevent a party from being compelled, by oral and perhaps false testimony to be held responsible for a contract he claims he never made. If, however, that party has offered in writing to make the very contract with which it is sought to charge him, he cannot justly complain because the acceptance of the other party is oral. *Bartlett-Heard Co.* v. *Harris*, 28 Ariz 497, 238 P 237.

A study of our cases and others applying the rule set forth in *Adams* v. *Janes, supra,* discloses that the trouble lay in deficiency of description of the subject matter of the contract in question or in some indefiniteness relating to the subject matter, or the offer or acceptance, or the consideration, etc. All of these matters go to "the description of the contract." Such is not the case here. It does not appear to us that the rule that a written offer may be accepted by parol so as to constitute a sufficient memorandum violates the rule of Adams v. Janes but, in any event, we follow the weight of authority and adopt it as the rule in this jurisdiction and hold that there was no error in admitting the oral testimony in question.

The defendant has briefed an exception to the admission of her testimony as to what she said at the Bank in respect to her offer and agreement to take the property. The ground of the objection was, in effect, that the statute barred this parol evidence. The only statement in the brief in support of the exception is that the contract was clearly one which was within the Statute of Frauds and parol testimony was inadmissible to show the terms thereof.

■ As we have held that exhibit 3 was properly admitted and as it shows the amount of the offer, error, if any, in the admission of this evidence was harmless. Moreover finding 8, in substance, has for its subject matter this testimony. This finding was not excepted to. Thus the exception to the admission of the testimony is of no avail. *Bethel Mills* v. *Whitcomb*, 116 Vt 357, 363, 76 A2d 548; *Randolph* v. *Barre*, 116 Vt 557, 559, 80 A2d 537.

All of the exceptions of the defendant relating to the Statute of

Frauds have been considered. All have been held to be without merit and they are overruled.

The defendant claims that a decree for specific performance should not have been granted for the reason that the plaintiff cannot give a clear title to the real estate in question. The basis for this claim is that the property is subject to an easement. This easement was that of a right of passage over a strip of land twelve feet wide between the land in question referred to as the Brown property and the land to its east called the Chowder House property. Approximately six feet of this passage was on the easterly side of the Brown property, and about six feet of it was on the westerly side of the Chowder House property. The right of passage was to be used and held in common by the owner and occupant of these adjoining lots and no building could be erected on the passageway. This easement is hereinafter more particularly set forth.

Joseph Gauthier owned both of these properties from October 12, 1887, to April 17, 1903. On April 17, 1903, Gauthier conveyed the Chowder House property to Edna Clark and on May 20, 1903, he conveyed the Brown property to E. T. Wood the predecessor in title to Calvin E. Brown, the testator.

The chancellor found that a right of way was not excepted or reserved in the conveyance from Gauthier to Wood. The defendant excepted to this finding on the ground here relied upon that a right of way, easement and restriction against building was excepted in this deed because of certain language therein contained hereinafter set forth and considered.

When the titles to both of these properties became vested in Gauthier the right of way as well as all other subordinate rights and easements was extinguished by unity of ownership and possession. *Wilder* v. *Wheeldon,* 56 Vt 344, 351; *Plimpton* v. *Converse,* 42 Vt 712, 717; 1 Tiffany, Real Property, § 328.

The defendant attempts to avoid the application of this rule in the present case because of language in the deed from Gauthier to Wood above referred to. The language is "with all reservations and rights mentioned in said deed exactly as specified therein." The "said deed" is that of Joseph and Emeline Noyes to Gauthier of the Brown property. The pertinent language in this deed is as follows: "Reserving the right of a pass on the east side of said lot and adjoining said shop six feet wide to extend back from said avenue to the back line of said shop, also granting to said Noyes, the right of

pass between said premises and said shop a pass twelve feet wide from the west side of shop to be used and held in common by the owner and occupant of each adjoining lot as a pass upon which no building is to be erected."

■ The defendant says in her brief, "By the reservation (in deed from Gauthier to Wood, supra) Gauthier effected a regrant to himself for the use and benefit of the 'owner and occupant' of the adjoining property of the right of a pass and imposed the prohibition against building." This claim is without merit for the reasons stated in *Nelson* v. *Bacon,* 113 Vt 161 at page 170, 32 A2d 140, 145, which with supporting citations omitted are as follows : "While under the common law an easement in fee cannot be created by way of reservation without words of inheritance, if an easement is made subject of an exception, technical words of limitation are not necessary. A reservation, moreover, cannot create an estate or interest in a stranger to the deed, but can operate only to the benefit of the grantor therein. An effective exception may be made in favor of a third person not a party to the deed, in recognition and confirmation of a right already existing in him." See also *Toussaint* v. *Stone,* 116 Vt 425, 427, 428, 77 A2d 824; *Goss* v. *Congdon,* 114 Vt 155, 40 A2d 429. It is clear that the owner of the Chowder House property could obtain no benefit from any reservation made by Gauthier.

The above quoted claim is the most definite statement of the defendant's reasons why an encumbrance exists on the property in question. She does seem to claim that in the alternative, by reference, Gauthier excepted and reserved this easement "so far as the Brown property is concerned." That this easement could not be placed on that property by way of an exception in favor of the adjoining property is clear from what is said in *Nelson* v. *Bacon, supra*. When the latter property was conveyed by Gauthier to Edna Clark before his conveyance of the Brown property to Wood there was no mention of the easement in question in the Clark deed. Finding No. 24. As Edna Clark was not a party to the deed from Gauthier to Wood and as she had no existing right in respect to the easement in question she could not acquire such right by way of exception in that deed.

No argument is made that Gauthier by an exception in his deed to Wood had the benefit of the easement in question. He could not create the easement in fee by way of reservation as no words of

inheritance were used. *Nelson* v. *Bacon, supra.* It is clear that he could not do by reference what he could not accomplish by his direct act. At the most he could have created only a life estate in the easement, Anno. 34 ALR at page 696, or an easement in gross, Easements, 17 Am Jur §§ 11 and 12; Easements, 280 CJS pages 634 and 635. In all probability if either had been created it would have terminated before this suit was brought as the record shows Gauthier a grantee in a deed in 1876. The record does not disclose whether he was living at the time suit was brought.

■ Some mention is made by the defendant in respect to Gauthier's intention in his deed to Wood. We could pass over this point because of insufficient briefing but because of our rule that in the construction of a deed the intention of the parties must govern if it can be ascertained from the language used, *Hopkins, the Florist* v. *Fleming,* 112 Vt 389, 391, 2 A2d 96, 142 ALR 463, we give it consideration.

The defendant contends, in effect, that the words "with all reservations and rights mentioned in said deed exactly as specified therein" appearing in the deed from Gauthier to Wood and heretofore referred to should be construed as meaning "excepting or reserving" all reservations etc. In other words that Gauthier intended to so except or reserve.

As we have seen, the most that Gauthier could have created for himself by way of reservation in his deed to Wood was a life estate in the easement or an easement in gross. It was impossible for him to retain all reservations and rights *exactly as specified* in the deed as these rights included one of passage over the adjacent property which, as we have seen, did not exist at the time of Gauthier's deed to Wood. Among such reservations and rights there was none of a life estate in the easement in favor of Gauthier. But of more importance, there is nothing in the record to show any reason why Gauthier should have desired to retain a life estate or any other right by exception or reservation which would be detrimental to the title or value of the Brown property. It is significant that in the deed to Wood the property is conveyed free from every encumbrance except taxes. It is reasonable to believe that the word "with" was used in its ordinary meaning and that Gauthier intended to convey to Wood the reservations and rights referred to in the deed, if any he had. Or, in other words, he intended to give Wood the benefit of such rights, if any, and did not intend to retain any for himself.

For the reasons above stated we hold as a matter of law that the encumbrance by easement on the property in question as here claimed by the defendant does not exist. This holding makes it unnecessary to discuss the exception to finding No. 21 relating to the effect of another deed by Gauthier.

The defendant excepted to finding No. 25 which was to the effect that the claimed right of way is not essential to the beneficial use and enjoyment in either of the adjoining properties. The chancellor also found that fuel oil intake pipes protruding from the west wall of the Chowder House building are readily accessible to delivery trucks by way of a hose from a vehicle parked in the highway.

The defendant says that such pipes are not readily accessible because in order to deliver oil it would be necessary to obstruct the public sidewalk by laying hose across it and maintaining it until delivery was complete.

It is common knowledge, as stated by the plaintiff, that this method of delivering oil is frequently and necessarily employed. That such a method must be employed does not make erroneous either finding above set forth. The exhibits show that for all practical purposes the claimed right of way could not be used for delivery of oil.

The defendant briefs other grounds for claimed error but as these were not raised below they will not be here considered and all of them relate to her claim in respect to the easement already disposed of. The exception is overruled.

The chancellor found that the plaintiff was, on June 3, 1950, and is at the present time, able and willing to convey good and unencumbered title to the Brown property to the defendant herein, in accordance with the terms of the memorandum set forth in plaintiff's exhibit 3.

The only claims of error in respect to this finding are those which were advanced in support of the claim that the property is encumbered by an easement which we have disposed of.

The next three exceptions that are briefed relate to refusals to find which had as their subject matter fraud on the part of L. B. Wood, cashier of the plaintiff, who represented the Bank in the negotiations for the sale of the property to the defendant. The chancellor as a part of finding No. 9 found that the offer of the defendant was not induced by fraud, but on the contrary both the offer and acceptance were made in good conscience.

154

This portion of the finding was excepted to but the exception was not briefed and consequently is waived. *Little* v. *Loud,* 112 Vt 299, 301, 23 A2d 628. This being so, such errors as may have been made therein, if any, are waived. *Scampini* v. *Rizzi,* 106 Vt 281, 288, 172 A 619. Thus the defendant stands in no better position in regard to this exception than she would have if it had not been taken. The requested findings under consideration conflicted with the ultimate finding of the chancellor as to fraud, which as we have seen stands as though it had not been excepted to, and, as a consequence, these requested findings were immaterial and it was not error to refuse them. *Holton's Estate* v. *Ellis,* 114 Vt 471, 485, 490, 49 A2d 210; *Nelson* v. *Travelers Ins. Co.,* 113 Vt 86, 99, 30 A2d 75; *Crampton* v. *Lamonda,* 95 Vt 160, 164, 114 A 42. We might add that we have examined these requested findings and for various reasons which we will not take the time or space to enumerate there was no error in refusing them independently of the reason heretofore given.

The remainder of the defendant's brief, as far as exceptions newly briefed, is devoted to the claim that the decree is not warranted by the findings. She relies first on the maxim that "he who comes into equity must come with clean hands." The grounds here are in substance the same as those set forth in the requested findings. The ultimate finding of absence of fraud and that both the offer and acceptance were made in good faith also controls here. Moreover, the defendant does not here rely on any finding in support of the claim now under discussion but refers us to certain evidence.

The defendant maintains that a decree for specific performance of a contract for the sale of land cannot be granted the vendor as it has a plain, adequate and complete remedy at law by a judgment for the agreed purchase price of the property, or, as in the present case, for the balance thereof. This claim presents the most important question for decision for we have no case wherein this point has been raised and determined. A thorough search of the authorities convinces us that it is held or considered with scarcely any dissent that specific performance of such a contract is granted in favor of the vendor as freely as in favor of the vendee though the relief actually obtained is only the recovery of money. Pomeroy Eq. Jur. 4th ed. § 2169; 49 Am Jur 110; 58 CJ 1029, 1030; Restatement, Contracts, § 360; Id. page 682, illustration 8; Anno. 65 ALR

at page 40 et seq. For illustrative cases see *Maryland Clay Co.* v. *Simpers,* 96 Md 1, 53 A 424; *Kahn* v. *Orenstein,* 12 Del Ch 344, 114 A 165; *Woodruff* v. *Germansky,* 233 NY 365, 135 NE 601; *Old Colony R. R.* v. *Evans,* 6 Gray 25; *Jones* v. *Newhall,* 115 Mass 24; *Staples* v. *Mullen,* 196 Mass 132, 81 NE 877; *Clark* v. *Cagle,* 114 Ga 703, 82 SE 21, LRA 1915A, 317; *Morgan* v. *Eaton,* 59 Fla 562, 52 So 305; *Freeman* v. *Paulson,* 107 Minn 64, 119 NW 651; *Cathcart* v. *Robinson,* 5 Pet 264, 8 L ed 120; *Hodges* v. *Kowing,* 58 Conn 12, 18 A 979, 981. In the case last cited it is said, "The cases on this question are all one way."

Professor Pomeroy in the section of his work, *supra,* says that three theories have been advanced to explain this rule (1) Inadequacy of damages at law, (2) Equitable conversion and (3) The doctrine of mutuality of remedy. The cases bear out this statement.

 It would serve no useful purpose to here analyze and discuss the cases to determine which theory or theories appear to us to be the most sound as a basis of the rule. Each has logic and reason for its support. We indeed would be presumptuous if we should reject the rule set forth by so many excellent authorities in the absence of any sound logical reasons for the rejection which we are unable to put forward. Consequently we adopt the rule and hold that the plaintiff vendor had the right to bring its bill for specific performance and that there was no error in the decree in its favor for the reason here claimed by the defendant.

 There are two matters which it is not necessary to discuss as they are not relied upon by the defendant as grounds for her claim that specific performance should not have been decreed. However, it might appear unless they are alluded to that we had overlooked them in making our holding above. The contract in question has been treated throughout by the parties as one for the sale of lands. Included in it as shown in exhibit 3 is certain personal property. The same rule applies as in the case of a contract for the sale of lands only. *Gould* v. *Coleman Estate,* 114 Vt 92, 95, 39 A2d 746; *Fowler* v. *Sands,* 73 Vt 236, 238, 50 A 1067; 49 Am Jur 109. The other matter is one of mutuality of remedy. It is apparent that at the time exhibit 3 was signed, the defendant could not have successfully compelled the plaintiff to perform, as it had not then accepted the offer. However, it is not essential that such mutuality exist at the inception of the contract, it is enough if it

156

exists at the time the suit for specific performance is begun. *Bufton* v. *Crane,* 101 Vt 276, 280, 143 A 382 ; 49 Am Jur 51. In the present case the offer was accepted before suit was brought and before the offer was withdrawn.

Before leaving the question now under discussion we call attention to *Seaver et al* v. *Lang,* 92 Vt 501, 104 A 877. This was an action in contract on a land contract. The plaintiffs were the vendors in the executory contract and the suit was brought for the recovery of the sum specified as the purchase price in the contract. The defendant was occupying the premises at the time of the trial. It was held that the plaintiffs could recover the stipulated purchase price as against the claim that at law the only damages allowable is the difference between the purchase price and the value of the premises. The Court at page 506 admits that there may be cases holding as claimed by the defendant. It is pointed out that these cases which have been examined are those where the vendor retains possession and that in such cases the rule claimed may afford compensation. It is then stated, "But where the vendee takes and retains possession, and the promise to pay is positive and absolute, and the position of the parties is unaffected by foreclosure or other proceedings, recovery of the purchase price should be allowed. To refuse it would be to ignore the plain terms of the engagement." The rule approved in *Waite* v. *Stanley,* 88 Vt 407, 92 A 633, LRA 1916C, 886, taken from *Hansbrough* v. *Peck,* 5 Wall 497, 18 L ed 520 was again endorsed and several remedies which the plaintiffs had on default of the defendant are pointed out. The last two named cases also were ones in which the vendees to the land contracts were in possession.

In the present case the defendant vendee was not and never had been in possession of the premises in question so the rule stated in the Seaver case does not conflict with our holding above that there was no error in granting the decree. It is apparent, however, that in a case presenting a factual situation answering the test set forth in the Seaver case that a vendor in a land contract would have a complete and adequate remedy at law as he could recover the full stipulated purchase price in an action at law which is all that he could recover by a decree for specific performance.

A decree for specific performance in favor of a vendor in a land contract cannot properly be granted after full conveyance of the premises in question. Restatement, Contracts, § 360, particularly comments c and e. Here there was no conveyance.

The last claimed reason why the decree should not have been granted is that the plaintiff has never been able to convey a good and unencumbered title to the property.

 It is generally implied, in the absence of express provision in the contract to a different effect, that the vendor in a contract for the sale of real estate will convey a good title, which is generally defined as a marketable title, and the vendee cannot be required to perform his part of the contract unless the vendor can convey such a title. 49 Am Jur 111. A vendee should have a title that will enable him to hold the land purchased free from the probable claim by another, a title which, if he wished to sell, would be reasonably free from doubt. 49 Am Jur 113. A title is marketable where its validity cannot be said to involve a question of fact, and is good as a matter of law. 55 Am Jur 638; Ann. 57 ALR at page 1297. In the present case we have held as a matter of law that the encumbrance claimed by the defendant does not exist. There is a good treatment of this matter in *Garner* v. *Union Trust Co.,* 185 Md 386, 45 A2d 106, 163 ALR 431. The title here meets the tests of a marketable title set forth in that case. We hold that no reasonable doubt exists as to the title to the property in question insofar as the claimed encumbrance is concerned and as far as it here appears the title is marketable.

The defendant says that the owners of the Chowder House property, or their successors in title, not being parties to this suit, are free to raise a question of the encumbrance and to institute proceedings against the defendant or any person holding title. This may be so but we do not believe that there is a reasonable chance that this will happen. None of the cases hold that a mere possibility of such a happening will make a title unmarketable.

*Decree affirmed.*