NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 46

No. 2017-250

| | |
|---|---|
| People's United Bank, NA | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Bennington Unit, Civil Division |
| | |
| Alana Provencale, Inc., et al. | December Term, 2017 |
| (R.E.E. & C. Capital Management Services, Inc., Appellant) | |

William D. Cohen, J.

John A. Serafino and Elizabeth A. Glynn of Ryan Smith & Carbine, LTD., Rutland, for
  Plaintiff-Appellee.

Merrill E. Bent of Woolmington, Campbell, Bernal & Bent, P.C., Manchester Center, for
  Interested Party-Appellant.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1. **CARROLL, J.** R.E.E. & C. Capital Management Services, Inc. (buyer) appeals a trial court order granting People's United Bank's motion to compel buyer to complete the purchase of a foreclosed property. Buyer raises three arguments: first, that it is not a party to the foreclosure sale, and the court therefore lacked jurisdiction to compel it to purchase the property; second, that the trial court erred in declining to apply the statutory remedy; and, third, that the trial court erred in ordering specific performance because an adequate remedy at law exists. We reverse and remand for proceedings consistent with this opinion.

¶ 2.     This case arises from the foreclosure sale of a commercial property located in Manchester, Vermont.  Prior to this dispute, the Bank issued loans to mortgagors and secured these loans with a mortgage on the property.  Mortgagors were unable to repay the loan and eventually defaulted on the obligation to the Bank.  The Bank then sought a judgment of foreclosure on the property and an order of public sale.  The foreclosure proceeded without opposition or controversy and in September 2016, the court issued a judgment and decree of foreclosure by judicial sale.

¶ 3.     The foreclosure judgment ordered that the property "shall be sold as a whole, to the highest bidder at public sale."  The property was subsequently auctioned in November 2016. During the auction, seven registered bidders lodged twenty-eight bids on the property.  Buyer placed the highest bid, which was one thousand dollars above the runner-up's highest bid.  Buyer made the required deposit and signed an auction purchase and sale agreement.  This buyer's agreement documents buyer's obligation to purchase the property, subject to the trial court's confirmation of the sale.  The buyer's agreement also recognized the Bank's right, pursuant to 12 V.S.A. § 4954(e), to request relief from the court in the event buyer failed to pay the balance of the purchase price.

¶ 4.     The Bank filed a motion for confirmation of the sale to buyer and provided all of the relevant reports to the court and to buyer.  The trial court granted the Bank's motion and confirmed the sale in December 2016.  The confirmation order names buyer and states that "the sale reported is hereby confirmed and title to the lands and premises shall be transferred to R.E.E. & C. Capital Management Services, Inc."  This order, as well as the auctioneer's report of sale, refers to buyer by name and indicates buyer as the high bidder at the public sale.  The confirmation order also listed the property's sale price and confirmed buyer's obligation to purchase the property.

¶ 5.     On the day the court issued the confirmation order, the Bank's attorney sent the confirmation order to buyer's attorney; the two parties agreed to close on the property on February

2

10, 2017. On February 8, 2017, two days before the scheduled closing, buyer wrote to the Bank, stating that "[i]t is with much regret that I need to inform you that I am not able to follow through with this transaction at this time." Buyer further stated that his "current investment group [had] decided that even at [the sale] price it [was] too risky to proceed with a new endeavor at this time." Thus, no closing occurred.

¶ 6.    The Bank then filed a motion with the trial court requesting that it enforce the confirmation order and arguing that, as the high bidder, buyer subjected itself to the court's jurisdiction and undertook an obligation to the court to purchase the property. Specifically, the Bank argued that specific performance was the appropriate remedy and that, therefore, the court should act in equity to compel buyer to close on the property. The Bank did not request forfeiture of the deposit or that the confirmation order be vacated. Buyer did not dispute that it defaulted on its obligation to purchase the property pursuant to the parties' purchase agreement but otherwise opposed the Bank's motion. In opposition, buyer argued that since it was not a party to the underlying foreclosure action, the court lacked jurisdiction over buyer, and therefore the court could not order buyer to close on the sale of the foreclosed property. Buyer also argued that the statute dictated an exclusive remedy—that the court could only order buyer to forfeit its deposit and vacate the confirmation order, and because the statute provided for an exclusive remedy, the court was barred from ordering the common law remedy of specific performance.

¶ 7.    The court heard oral argument on the motion to enforce, but no evidence was offered at the hearing. The court granted the motion to enforce, finding first that by bidding at a judicial sale, a bidder, such as buyer, subjects itself to the court's oversight, becoming a "quasi-party." The court then concluded that it could issue orders as to the high bidder in furtherance of its statutorily mandated judicial obligation to oversee the foreclosure process. With respect to the Bank's right, pursuant to the foreclosure statute, to ask the court to order forfeiture of the deposit and to vacate the confirmation order, the court concluded that those were not the Bank's exclusive

3

and mandatory remedies. The court determined that the mandatory language in the relevant statutory provision requires the court to order this remedy only when a bank chooses that option. Ultimately, the court concluded that specific performance was a permissible and appropriate remedy and ordered buyer to close on the property. Buyer appealed.[1]

¶ 8.    "[A] decree for specific performance of a contract is not a matter of right and rests in the sound discretion of the court." Davis v. Hodgdon, 133 Vt. 49, 53, 329 A.2d 669, 672 (1974). We review a trial court's discretionary rulings for abuse of discretion, and we will find an abuse of discretion only upon "a showing that the trial court has withheld its discretion entirely or that it was exercised for clearly untenable reasons or to a clearly untenable extent." Quenneville v. Buttolph, 2003 VT 82, ¶ 11, 175 Vt. 444, 833 A.2d 1263 (quotation omitted). Our interpretation of a statute, as a question of law, is de novo. State v. Therrien, 2011 VT 120, ¶ 9, 191 Vt. 24, 38 A.3d 1129. "When construing a statute, our paramount goal is to effectuate the intent of the Legislature." State v. Thompson, 174 Vt. 172, 174, 807 A.2d 454, 458 (2002). Our review begins with a statute's plain language—if that language conveys the Legislature's intent clearly, we need go no further. Id. at 174-75, 807 A.2d at 458.

¶ 9.    We begin with buyer's argument that the court lacked authority to compel it to act because buyer was not a party to the underlying foreclosure action. We disagree and hold that a high bidder's successful bid in a judicial sale, and the court's subsequent confirmation of the foreclosure sale pursuant to 12 V.S.A. § 4954(a), renders a buyer a limited party such that the court is authorized to issue orders directing the buyer's action relative to the property's purchase. Section 4954 of Title 12 vests in the superior court the authority and discretion to confirm the sale of a property foreclosed by judicial sale. See HSBC Bank USA v. McAllister, 2018 VT 9, ¶ 7, __ Vt. __, __ A.3d __. The buyer of a foreclosed property thus comes within the superior court's

_____

[1] Mortgagors did not participate in this appeal.

4

jurisdiction in the court's order confirming the sale of the property, such that "[t]he order of the court confirming the sale shall be conclusive evidence as against all persons that the foreclosure and sale were conducted in accordance with" statutory requirements. 12 V.S.A. § 4954(a). The civil division of the superior court has "exclusive jurisdiction to hear and dispose of any requests to modify or enforce orders in civil cases previously issued by" the court. 4 V.S.A. § 31(4). Therefore, the superior court has continuing jurisdiction regarding the court's own confirmation of the sale of a foreclosed property as to the parties to the sale, including the buyer of the foreclosed property, and is authorized to issue orders concerned with the transfer of the property between the two parties.

¶ 10. Our conclusion here echoes the trial court's conclusion on this issue with one exception—the trial court characterized buyer as a "quasi-party." In this context, "limited party" is a more appropriate designation. "Quasi" lends its usefulness to many situations where it is meant as "having some resemblance to," "seemingly," or "apparently." Webster's New International Dictionary 2035 (2d ed. 1961). Here, a more concrete and actual relationship exists that deserves a designation fitting to reality—that the party is subject to the authority of the court, but only for a limited purpose.[2]

¶ 11. We now turn to buyer's primary argument, that the trial court erred in ordering specific performance because the court was required to apply an exclusive statutory remedy, and, moreover, the buyer's agreement required the same remedy. First, we disagree with buyer that the Bank was limited to the remedy provided by statute. We agree with the trial court's decision—

---

[2] This narrow limited party status does not confer all of the rights of a legal party to an action. A high bidder, or other interested entity, such as an unsuccessful bidder challenging the judicial sale process, may seek actual party status through a proper motion to intervene. See V.R.C.P. 24. We also note that in this case, a confirmation order was issued. Because a confirmation order was issued, we need not consider whether the court might, in some instances, have jurisdiction over an auction's high bidder earlier in the judicial foreclosure process, such as between the time of sale and the issuance of the confirmation order.

5

that 12 V.S.A. § 4954(e) does not limit the Bank's remedies. In relevant part, § 4954(e) provides "[i]n the event that the purchaser fails to pay the balance of the purchase price according to the terms of the sale, then, upon the request of the plaintiff, the down payment shall be forfeited and the court shall issue an order vacating the confirmation order." The statute also provides that "[u]pon motion and after hearing, the court may issue a confirmation order to the second highest bidder." Id. By the plain language of the statute, these remedies are conditioned on a bank's, or a plaintiff's, request. If a bank makes a request, then the down payment shall be forfeited, and the court shall vacate the confirmation order. The mandatory language "shall" only requires a particular response by the court if a bank invokes the remedy by making the request. Likewise, only "upon motion and after hearing" can a court issue a confirmation order to the second highest bidder. In this case, the Bank did not request that the court order this statutory remedy. Because neither of these potential remedies were invoked, the court was not limited to application of either of them and could consider the appropriateness of other remedies.

¶ 12.    Buyer argues that our decision in Winney v. Ransom & Hastings, Inc., 149 Vt. 213, 542 A.2d 269 (1988), requires the contrary conclusion. In that case we explained "[i]t is a general rule of construction in Vermont that '[w]here a statute confers a remedy unknown to common law, and prescribes the mode of enforcing it, that mode alone can be resorted to.' " Id. at 214, 542 A.2d at 270 (quoting Thayer v. Partridge, 47 Vt. 423, 428 (1875)). But the Winney rule does not apply in this case. There, the Court considered the exclusivity of the statutory remedy provided by Vermont's Dram Shop Act, which the Court had previously held " 'changed the common-law rule of proximate cause which obtains in other tort actions.' " Id. at 215, 542 A.2d at 270 (quoting Healey v. Cady, 104 Vt. 463, 466, 161 A. 151, 152 (1932)). The Dram Shop Act did not require proof of proximate cause and, thus, created a new legal right and furnished a new—and exclusive—legal remedy for violation of that right. Id. at 215-16, 542 A.2d at 270. Here, the fundamental legal right enforced by § 4954(e)'s remedy is the right of a party to have a land

6

transfer agreement completed. Even though this legal right, in this context, is within the statutory framework that governs foreclosure, the right is not, in itself, a creature of statute. That is, the legal right to an agreement's completion does not arise exclusively from Vermont's foreclosure statutes. Thus, Winney's first prong is not met here, and our holding in that case does not require us to conclude that the remedy here is exclusive.

¶ 13. Buyer also argues as a component of its primary argument that the purchase and sale agreement provided an exclusive remedy. After auction, both parties signed this contract, which provides for a remedy provision nearly identical to the language in § 4954(e). As one example, Term 5 of the contract read:

> In the event the Purchaser shall fail to pay the balance of said purchase price on the Closing Date, Plaintiff shall have the right to request that the Court make an order forfeiting the deposit and vacating the confirmation order. Plaintiff shall also have the right to request that the court issue a confirmation order for sale to the second highest bidder.

This language, which is essentially identical to § 4954(e), indicates a plaintiff has the option of requesting a forfeiture of the deposit and vacating the confirmation order. Nothing in the contract says the remedy is mandatory or exclusive. See 9A V.S.A. § 2—719(1)(b) ("[R]esort to a remedy as provided [in a contract for sale of goods] is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.").

¶ 14. Having concluded that buyer is subject to court authority and that seller is not bound by an exclusive statutory remedy, we now turn to the question of whether specific performance was a permissible and appropriate remedy in this case. Seller contends that specific performance is an appropriate remedy; the trial court agreed and ordered buyer to close on the property. The trial court relied on First Hawaiian Bank v. Timothy, in which the Hawaii appellate court looked to the American Jurisprudence treatise for available remedies when a purchaser fails to close on a property acquired at a judicial sale. The court in First Hawaiian noted five distinct remedies:

(1) it may set aside the sale, release the purchaser, and decree a resale; (2) it may confirm the sale and permit an action at law to be instituted against the purchaser and its sureties, to recover the amount of the bid, or damages; (3) it may have recourse to the vendor's lien reserved for the price, or to the purchase-money mortgage or other security that may have been given; (4) it may specifically enforce compliance by summary proceedings against the purchaser; and in some jurisdictions, its successors or sureties; or (5) it may order a resale at the purchaser's risk, with a provision that he or she shall be held for the deficiency and costs of resale in case the property brings less than the bid at the first sale.

First Hawaiian Bank v. Timothy, 31 P.3d 205, 219 (Haw. Ct. App. 2001) (quoting 47 Am. Jur. 2d Judicial Sales § 223, at 602). Based on this language, the trial court concluded that specific performance was a remedy potentially available to seller and then ordered buyer to close on the property, thus granting seller the remedy it sought.

¶ 15. The court also considered Vermont caselaw to decide whether specific performance was a permissible remedy in this case. This court has previously held that "specific performance of [a contract for sale of land] is granted in favor of the vendor as freely as in favor of the vendee though the relief actually obtained is only the recovery of money." First Nat'l Bank of St. Johnsbury v. Laperle, 117 Vt. 144, 154, 86 A.2d 635, 641 (1952). Thus, in Laperle, the Court held that the "plaintiff vendor had the right to bring its bill for specific performance." Id. at 155, 86 A.2d at 642. This holding established that a seller of property can seek specific performance instead of just seeking monetary damages. Thus, the Bank in this case was allowed to ask for specific performance and, under the right circumstances, the court could award that remedy.

¶ 16. Given that specific performance is a permissible remedy in some instances, the question becomes whether the facts of this case support the trial court's decision granting that remedy to the Bank. We conclude that here, the trial court did not engage in the analysis of this question required by our caselaw and that, therefore, the court's decision was an abuse of discretion.

8

¶ 17.    Though "specific performance is at the trial court's discretion," Quenneville, 2003 VT 82, ¶ 11, this Court has held that specific performance is not available if there is a sufficient legal remedy.

> Where the inadequacy of damages is great, and the difficulties not extreme, specific performance will be granted and the tendency in modern times has been increasingly to grant relief, where under the particular circumstances of the case damages are not an adequate remedy. Of course, in a particular case, the remedy at law may be adequate and specific performance will be denied for that reason.

Gerety v. Poitras, 126 Vt. 153, 154-55, 224 A.2d 919, 921 (1966) (citation omitted). In short, "[e]quity will not afford relief where there is a plain, adequate, and complete remedy at law." Id. at 155, 224 A.2d at 921. A party seeking the "special equitable remedy of specific performance . . . has the burden to allege and demonstrate in the complaint why money damages will not furnish an adequate remedy." Id. Put simply, specific performance is a remedy available only when there is no adequate alternative remedy, and the plaintiff has the burden to prove that alternative remedies are inadequate.

¶ 18.    Thus, in determining whether to order specific performance, the trial court must determine whether there is an alternative plain, adequate, and complete remedy that could make the Bank whole, and then weigh that alternative remedy against the Bank's argument regarding the insufficiency of that remedy. In this case, the trial court did not consider the adequacy of other potential remedies. The trial court effectively withheld its discretion in this case, constituting an abuse of that discretion.

Reversed and remanded for further proceedings consistent with this opinion.

FOR THE COURT:

_____
Associate Justice

9