NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2019 VT 66

No. 2018-342

| | |
|---|---|
| Reed Doyle | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Washington Unit, |
| | Civil Division |
| | |
| City of Burlington Police Department | April Term, 2019 |

Mary Miles Teachout, J.

Anthony N.L. Iarrapino of Wilschek Iarrapino Law Office PLLC, and James Diaz and Lia Ernst of ACLU Foundation of Vermont, Montpelier, for Plaintiff-Appellant.

Eileen M. Blackwood and Justin St. James, Office of City Attorney, Burlington, for Defendant-Appellee.

Jennifer Duggan and Elena Mihaly, Conservation Law Foundation, and Jamey Fidel and Jon Groveman, Vermont Natural Resources Council, Montpelier, for Amici Curiae Conservation Law Foundation and Vermont Natural Resources Council.

David Putter and Christopher D. Winters, Montpelier, for Amicus Curiae Jim Condos, Secretary of State of the State of Vermont.

Daniel P. Richardson and Stephen F. Coteus of Tarrant, Gillies & Richardson, Montpelier, and Timothy Cornell and Cornell Dolan, Boston, Massachusetts, for Amici Curiae Vermont Journalism Trust, New England First Amendment Coalition, and Vermont Press Association.

Carl Andeer, Vermont League of Cities and Towns, Montpelier, for Amicus Curiae Vermont League of Cities and Towns.

PRESENT: Reiber, C.J., Skoglund, Eaton and Carroll, JJ., and Burgess, J. (Ret.), Specially Assigned

¶ 1. **REIBER, C.J.** Reed Doyle appeals the trial court's denial of his motion for partial judgment on the pleadings pursuant to Vermont Rule of Civil Procedure 12(c). In his motion, plaintiff argued that the Burlington Police Department (BPD) unlawfully withheld public records

in violation of the Public Records Act (PRA) when it charged a fee for costs that would be incurred by complying with his request. Based on the plain language of the PRA, we hold that the BPD cannot charge for staff time spent in complying with requests to inspect public records. Accordingly, we reverse.

¶ 2. Plaintiff stated the following facts in his complaint. Plaintiff witnessed an incident involving BPD officers in a public park. Shortly thereafter, plaintiff submitted a citizen's complaint form to the BPD to voice concerns about alleged officer misconduct and unreasonable use of force during the incident. Plaintiff subsequently requested to inspect body camera footage, among other records, related to the incident. The BPD denied his request. Plaintiff appealed the denial to BPD Chief Brandon del Pozo. In his response to the appeal, Chief del Pozo characterized plaintiff's request as "seeking to inspect" records. He stated that, pursuant to statute, the BPD could only produce a heavily redacted form of the requested records, and the staff time to review and redact the records would cost plaintiff several hundred dollars.[1] Chief del Pozo also informed plaintiff that he must pay a deposit before the BPD would begin reviewing and redacting the requested records.

¶ 3. After filing a complaint in the civil division against the BPD, plaintiff moved for a partial judgment on the pleadings. He argued that the BPD violated the PRA when it failed to provide the requested records for inspection free of charge. The trial court denied plaintiff's motion. Plaintiff timely appealed.

¶ 4. "When reviewing a denial of a motion for judgment on the pleadings, the issue before the Court is whether the movant is entitled to judgment as a matter of law on the basis of the pleadings." Fercenia v. Guiduli, 2003 VT 50, ¶ 6, 175 Vt. 541, 830 A.2d 55 (mem.). "[W]e accept as true all factual allegations contained in the complaint and all reasonable inferences that can be drawn from those allegations. . . . We . . . focus our analysis on the court's conclusions of

---

[1] Plaintiff does not challenge on appeal whether the redactions are required by law.

law, which we review de novo." Flint v. Dep't of Labor, 2017 VT 89, ¶ 3, 205 Vt. 558, 177 A.3d 1080 (quotation omitted).

¶ 5. The parties dispute whether the PRA authorizes state agencies to charge and collect fees for staff time spent complying with requests to inspect public records. This Court applies "a nondeferential and plenary standard of review to issues of statutory interpretation." Vt. Human Rights Comm'n v. Agency of Transp., 2012 VT 88, ¶ 7, 192 Vt. 552, 60 A.3d 702; see also 1 V.S.A. § 319(a) (directing trial court to review denials of PRA requests de novo). "[O]ur primary goal" when interpreting statutes is "to give effect to the Legislature's intent." Lydy v. Trustaff, Inc., 2013 VT 44, ¶ 6, 194 Vt. 165, 76 A.3d 150. We begin our review with the statute's plain meaning. People's United Bank, NA v. Alana Provencale, Inc., 2018 VT 46, ¶ 8, 207 Vt. 362, 189 A.3d 71. "If the statute is unambiguous and its words have plain meaning, we accept the statute's plain meaning as the intent of the Legislature and our inquiry proceeds no further." Wesco, Inc. v. Sorrell, 2004 VT 102, ¶ 14, 177 Vt. 287, 865 A.2d 350.

¶ 6. Section 316(c) authorizes an agency to "charge and collect the cost of staff time associated with complying with a request for a copy of a public record." 1 V.S.A. § 316(c) (emphasis added). By its plain language, this provision authorizes charges only for requests for copies of public records, not for requests for inspection. "We will not read an implied condition into a statute unless it is necessary in order to make the statute effective." Brennan v. Town of Colchester, 169 Vt. 175, 177, 730 A.2d 601, 603 (1999) (quotation and emphasis omitted). If we interpret § 316(c) as also applying to requests to inspect, it would render "a copy of" mere surplusage. See In re Miller, 2009 VT 36, ¶ 14, 185 Vt. 550, 975 A.2d 1226 ("[W]e must not allow a significant part of a statute to be rendered surplusage or irrelevant." (quotation omitted)).

¶ 7. Moreover, the plain language throughout § 316 indicates the Legislature's intent to distinguish requests to inspect public records from requests to copy them. Section 316 begins by providing that "[a]ny person may inspect or copy any public record." 1 V.S.A. § 316(a) (emphasis added). This disjunctive "or" creates a distinction between requests to "inspect" and to "copy"

3

that continues throughout the section. The statute specifies the times when a person may <u>inspect</u> public records in § 316(a)(1)-(2); authorizes charges associated with requests for <u>copies</u> in § 316(b) and § 316(c); and further addresses charges, equipment, monies, and formats for <u>copies</u> in § 316(d)-(i).

¶ 8.     Notably, where § 316 authorizes charges for copies, it contemplates that agencies will transfer the copies to requesters—indicating the word "copy" is not interchangeable with "inspect" for the purposes of the statute. Section 316(b) states an agency may "charge and collect from the person requesting the copy the actual cost of providing the copy. . . . The agency may also charge and collect from the person making the request, the costs associated with <u>mailing or transmitting</u> the record . . . ." (Emphasis added.) Section 316(c) states, after authorizing charges for "staff time associated with complying with a request for a copy," that the "agency may require that . . . all charges be paid . . . prior to <u>delivery</u> of the copies." (Emphasis added.) This language indicates that in authorizing charges for a "copy," the Legislature meant a record that the requester could keep and review wherever and whenever the requester chooses. The plain language of § 316 thus separates requests to copy from requests to inspect, and the section only authorizes charges for staff time associated with requests for copies—not requests to inspect.

¶ 9.     We acknowledge that here, where no one disputes that the BPD must redact exempted material before producing the record for inspection, the BPD cannot comply with the inspection request without first creating a second, redacted version of the requested material.[2] See 1 V.S.A. § 318(e) (providing that agency must produce requested record with exempted material redacted rather than simply withholding record). In that situation, the BPD argues, the request to inspect is really a request for a copy. More generally, the BPD contends that the work involved in complying with a request determines whether a state agency may charge fees for staff time, not a

---

[2] We make no decision regarding whether the BPD must make the redactions in this case. Rather, we assume, without deciding, that the BPD must do so because the parties do not dispute the issue.

semantic distinction between inspection and copying. In support of its rationale, the BPD points to Herald Association v. Dean, in which we held that the PRA "does not allow an agency to withhold public records simply because complying with the request is difficult or time consuming." 174 Vt. 350, 359, 816 A.2d 469, 477 (2002). We held that the PRA "provides a different remedy in those circumstances": the "agency may 'charge and collect the cost of staff time associated with complying with a request for a copy of a public record.' " Id. (quoting 1 V.S.A. § 316(c)).

¶ 10. Herald Association is inapposite because it does not address a request for inspection. More importantly, as stated above, the statute's plain language indicates that the Legislature did not intend to authorize charges associated with staff time in complying with a request to inspect. Where "the meaning is clear" according to "the plain language of the statute," "we will enforce it according to its terms." State v. Richland, 2015 VT 126, ¶ 6, 200 Vt. 401, 132 A.3d 702; see also State v. LeBlanc, 171 Vt. 88, 91, 759 A.2d 991, 993 (2000) ("[W]e presume that all language in a statute was drafted advisedly, and that the plain ordinary meaning of the language used was intended." (quotation omitted)).

¶ 11. Furthermore, the PRA explicitly directs courts to "liberally construe[]" the Act to "provide for free and open examination of records." 1 V.S.A. § 315(a). "[T]he Act represents a strong policy favoring access to public documents and records." Shlansky v. City of Burlington, 2010 VT 90, ¶ 12, 188 Vt. 470, 13 A.3d 1075 (quotation omitted). This policy is based on the Legislature's acknowledgment that "open access to governmental records is a fundamental precept of our society" and "it is in the public interest to enable any person to review and criticize [the] decisions [of officers of government]," who are "trustees and servants of the people." Id. (quotation omitted). Given this legislative policy, we should "resolve any doubt in favor of disclosure." Sawyer v. Spaulding, 2008 VT 63, ¶ 8, 184 Vt. 545, 955 A.2d 532 (mem.); see also

<u>Shires Hous., Inc. v. Brown</u>, 2017 VT 60, ¶ 9, 205 Vt. 186, 172 A.3d 1215 ("[E]vidence of the legislative policy at which the statute was aimed [is an] indication[] of the Legislature's intent.").[3]

¶ 12.    We note that both parties, as well as the many amici curiae, raise competing policy concerns regarding their respective positions.  These concerns cannot control our analysis.  "Our role is to interpret the law to give effect to the Legislature's intent, not to impose our policy preferences on the public." <u>McGoff v. Acadia Ins. Co.</u>, 2011 VT 102, ¶ 13, 190 Vt. 612, 30 A.3d 680 (mem.); see also <u>Rousso v. State</u>, 239 P.3d 1084, 1095 (Wash. 2010) (en banc) ("It is the role of the legislature, not the judiciary, to balance public policy interests and enact law.").  "[W]e must accord deference to the policy choices made by the Legislature," <u>Badgley v. Walton</u>, 2010 VT 68, ¶ 38, 188 Vt. 367, 10 A.3d 469, and "enforce [the statute] according to its terms," <u>Richland</u>, 2015 VT 126, ¶ 6.  See also <u>Sirloin Saloon of Shelburne, Rutland, & Manchester, Inc. v. Dep't of Emp't & Training</u>, 151 Vt. 123, 129, 558 A.2d 226, 229-30 (1989) ("[T]he policy issue is for the Legislature, not this Court, where as here the statute is plain on its face.").

¶ 13.    Accordingly, we conclude that state agencies may not charge for staff time spent responding to requests to inspect public records pursuant to the PRA.  We hold the trial court erred in denying plaintiff's motion for partial judgment on the pleadings.

<u>Reversed</u>.

FOR THE COURT:

_____
Chief Justice

¶ 14.    **EATON, J., dissenting.**    In my view, the plain language of the relevant provision of the Public Records Act (PRA) authorizes public agencies to charge fees for record requests

---

[3]  The briefings devoted significant attention to the legislative history regarding § 316(c). We need not consider the legislative history here because the plain language of the statute is unambiguous.  See <u>Flint</u>, 2017 VT 89, ¶ 5 ("[W]e resort to other tools of statutory construction— such as legislative history—only if the plain language of the statute is unclear or ambiguous.").

requiring staff time to review and expunge exempt portions of the requested records. Accordingly, I would uphold the trial court's order denying plaintiff's motion for judgment on the pleadings.

¶ 15.  As enacted in 1976, the PRA allowed any person to "inspect or copy" public records during certain hours and permitted public agencies with photocopying machines to collect copying costs. 1975, No. 231 (Adj. Sess.), § 1; see 1 V.S.A. § 316(a). The key provision at issue here, 1 V.S.A. § 316(c), was added in a 1996 amendment that dealt more specifically with permitted charges for providing access to public records, including electronic records. See 1995, No. 159 (Adj. Sess.), § 1. Section 316(c) provides, in relevant part, that:

> in the following instances an agency may <u>also</u> charge and collect the cost of <u>staff time</u> associated with complying with a request for a copy of a public record: (1) the time directly involved in complying with the request  exceeds 30 minutes; (2) the agency agrees to create a public record; or (3) the agency agrees to provide the public record in a nonstandard format and the time directly involved in complying with the request exceeds 30 minutes.

(Emphasis added.)

¶ 16.  The question here is whether this provision authorizes an agency to charge staff time for producing a redacted copy of a record for which exemptions are required by law. I would answer that question in the affirmative, given the plain language of § 316(c) and other related provisions in the statute. See <u>Brown v. W.T. Martin Plumbing & Heating, Inc.</u>, 2013 VT 38, ¶ 20, 194 Vt. 12, 72 A.3d 346 (determining legislative intent requires examining entire statute rather than isolated phrases). I find little, if any, support for plaintiff's and the majority's position that reimbursement for staff time is unavailable when a requester seeks to inspect a record without obtaining a personal copy of the record, irrespective of the amount of time it takes agency staff to redact exempt information from the requested record and create a copy. In either case, the request requires the production of a copy.

¶ 17.  A public agency's lawfully required duties in responding to record requests, not the wording of the particular request, should determine whether the agency is authorized to charge for staff time. When a request is made for a record that contains confidential information exempt from

7

public access, a public agency may not withhold the record on that basis, but rather must "redact the information it considers to be exempt and produce the record accompanied by an explanation of the basis for denial of the redacted information." 1 V.S.A. § 318(e). Further, absent legal authority to do so, custodians of public records "shall not destroy, give away, sell, discard, or damage any record or records in his or her charge." Id. § 317a(b).

¶ 18. Therefore, when a person seeks access to a record that contains confidential information unavailable to the public, the custodian is compelled to create a new record—a redacted copy of the requested record—for public access. The cost of staff time to create the new record is explicitly permitted under § 316(c)(2). To the extent the redacted copy cannot be considered a new record because it does not contain any additional information beyond that contained in the original record, it then must be considered a copy—a redacted copy—of the original record, for which the cost of staff time beyond thirty minutes is collectible under § 316(c)(1).

¶ 19. It has to be one or the other. The answer cannot be that no reimbursement for staff time is available because the requester did not seek a personal copy of the record. It makes no sense for the Legislature to authorize reimbursement for staff time reviewing, redacting, and producing records for which a copy is sought, but not for the exact same work when a person seeks only to inspect a redacted copy.

¶ 20. Nothing in § 316(c) compels such an improbable construction of the statute. Construing § 316(c) to authorize reimbursement for staff time to produce redacted copies of requested records does not render the provision's reference to "a request for a copy" surplusage, as plaintiff asserts. The provision encompasses instances both when a copy is made upon a request for a copy and when a redacted copy is produced upon a request to inspect a record that contains exempt information. Indeed, removing the phrase "for a copy" would permit an agency to be reimbursed for staff time associated with any request, including requests to inspect records that contained no confidential material and thus required no redacted copy.

8

¶ 21.    Nor is such a construction compelled by the Legislature providing: (1) in § 316(b) that an agency may charge a person requesting a copy "the actual cost of providing the copy," including "the costs associated with mailing or transmitting the record," or (2) in § 316(c) that an agency may require record requests in writing and payment in whole or part "prior to delivery of the copies."   The fact that the Legislature authorizes such charges when personal copies are requested should not mean that charges are restricted solely to instances when there is a copy sent to the requester.

¶ 22.    To the extent that § 316(c) could be considered ambiguous with respect to the issue before us, nothing in the legislative history cited by plaintiff compels the construction of the provision adopted by the majority.   Indeed, in the most recent amendment of the PRA, the Legislature declined to enact proposed language explicitly stating that a public agency may not collect fees in response to a request to inspect public records.  See 2017, No. 166 (Adj. Sess).  To be sure, "[l]egislative inaction has been called 'a weak reed upon which to lean' and a 'poor beacon to follow.' " Lake Bomoseen Ass'n v. Vt. Water Res. Bd., 2005 VT 79, ¶ 21, 178 Vt. 375, 886 A.2d 355 (quoting 2B N. Singer, Sutherland on Statutes and Statutory Construction § 49:10, at 112-14, 117 (6th ed. 2000)).   But that principle applies equally well to plaintiff's heavy reliance on past legislative inaction.

¶ 23.    Without question, the laudatory policy underlying the PRA is "to provide for free and open examination of records consistent with . . . the Vermont Constitution." 1 V.S.A. § 315(a). But at the same time the Legislature recognized that record requests "entail expending public resources to fulfill requests" and thus established in the PRA "a process for public agencies to charge requesters for the actual costs of copying public records and for staff time associated with fulfilling requests." Sawyer v. Spaulding, 2008 VT 63, ¶ 11, 184 Vt. 545, 955 A.2d 532 (mem.) (citing 1 V.S.A. § 316).

¶ 24.    Taken to its logical extreme, the majority's holding bars public agencies from obtaining reimbursement for significant staff time in response to onerous requests to inspect

9

records requiring redactions—for example, a request for all body camera footage from a municipal police department for any given period of time. See Final Legislative Council Staff Report on Public Records, Privacy, and Electronic Access in Vermont at 11 (Jan. 2005), https://www.sec.state.vt.us/media/26883/Public_records_study_report.pdf [https://perma.cc/9S43 -DZUH] (stating that "[i]t is not uncommon for state agencies to receive requests for massive amounts of public records or to receive multiple requests from the same individual," and that "[t]he task of gathering, reviewing, and when appropriate, redacting information in documents is time intensive and costly"). To be sure, in "unusual circumstances," an agency "<u>may</u> request that a person seeking a voluminous amount of separate and distinct records narrow the scope of a public records request," 1 V.S.A. § 318(d) (emphasis added); however, nothing in the statute precludes a requester from resisting any attempts by the agency to have the request narrowed. Adhering to § 316(c)'s plain language would avoid compelling agencies to respond to such burdensome requests without obtaining reimbursement for reasonable staff time associated with the requests.

¶ 25.    For the reasons stated above, I respectfully dissent.

¶ 26.    I am authorized to state that Justice Carroll joins this dissent.

---

Associate Justice

10