NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 86

No. 2020-270

| | |
|---|---|
| Christopher McVeigh | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Washington Unit, |
| | Civil Division |
| | |
| Vermont School Boards Association | March Term, 2021 |

Robert R. Bent, J.

Christopher McVeigh of McVeigh ◆ Skiff, LLP, Burlington, for Plaintiff-Appellant.

Bernard D. Lambek of Zalinger Cameron & Lambek, Montpelier, for Defendant-Appellee.

John H. Klesch of Stitzel, Page & Fletcher, P.C., Burlington, and Francisco M. Negrón, Jr., Chief Legal Officer, Alexandria, Virginia, for Amicus Curiae National School Boards Association.

PRESENT: Reiber, C.J., Robinson,* Eaton, Carroll and Cohen, JJ.

¶ 1. **COHEN, J.** Plaintiff Christopher McVeigh filed a complaint in the civil division of the superior court seeking a declaratory judgment that defendant, the Vermont School Boards Association (VSBA), is the functional equivalent of a public agency for purposes of the Vermont Public Records Act (PRA), and therefore must comply with plaintiff's request for copies of its

_____

* Justice Robinson was present for oral argument but did not participate in this decision.

records.  The civil division concluded that the VSBA was not a public agency subject to the PRA and granted summary judgment in favor of the VSBA.  We affirm.

¶ 2.    In June 2019, plaintiff sent a letter to the VSBA requesting copies of any emails between the VSBA's executive director and the director of the Vermont Principals Association and the Vermont Superintendents Association from January 1, 2016, to June 18, 2019.  The VSBA refused to comply, replying that it was a private nonprofit corporation and was not subject to public records requests.  Plaintiff then filed this action in the civil division seeking a declaration that the VSBA was the functional equivalent of a public agency and that its records were open to public inspection and copying under the PRA.  After limited discovery, the parties filed cross-motions for summary judgment.

¶ 3.    The following facts were undisputed for purposes of summary judgment.  The VSBA was incorporated in 1963 as a private Vermont nonprofit corporation.  It is a membership organization made up of Vermont supervisory union boards, supervisory district boards, and private school boards.  Any school board in Vermont has the option to join the VSBA, but membership is not required by state law. Membership and voting rights are open to both public and private school board members.

¶ 4.    The VSBA has an executive director and a board of directors.  The board is responsible for the oversight of the organization and provides guidance to the executive director concerning public policy.  Currently, all members of the board of directors are from public school boards and are therefore publicly elected officials.

¶ 5.    The VSBA's bylaws set forth the mission of the organization as follows: "The VSBA exists to achieve our vision for public education by supporting all school boards to serve as effective trustees for education on behalf of their communities and by providing a strong

2

collective voice toward enhancing the cause of public education in Vermont." Under the heading "Goals," the bylaws state:

> VSBA will support local school boards by:
>
> 1. advocating for high quality public education at the state and national levels;
>
> 2. providing education and training to prepare and assist board members to carry out their roles effectively;
>
> 3. researching issues, collecting and disseminating information[;]
>
> 4. providing legal and policy services[;]
>
> 5. providing a number of customized services to support boards in carrying out their roles.

¶ 6. Member school boards pay dues to the VSBA in accordance with Article IV of the bylaws. The VSBA also receives funding from fees for services to school districts, publications, grants from nongovernment sources, and service agreements with other education-related organizations. In fiscal year 2020, the VSBA budget anticipated that 53% of its income would come from membership dues, 12% from fees for services to school districts, and 31% from service agreements with other educational organizations, primarily the Vermont School Boards Insurance Trust. The remaining funds would come from publications sold by the organization.

¶ 7. The VSBA has four full-time employees. These employees advocate the VSBA's position to the Legislature and participate in policy development with the Agency of Education, the State Board of Education, and other educational organizations. The VSBA employees also provide training, support, and information updates for school board members; consulting services for member boards to assist with superintendent searches and evaluations, strategic planning, governance transitions, and policy governance; and consultation regarding legal questions, legal training, and general collective bargaining supports for school boards and superintendents. The VSBA publishes model policies and provides policy audits for members.

3

¶ 8.     The VSBA is mentioned in several Vermont statutes.  In 2018, the Legislature created the Commission on Public School Employee Health Benefits to determine premiums and employee expenses for health benefits on a statewide basis.  16 V.S.A. § 2102(a).  The Act provides that five of the ten members of the commission are representatives of school employers and "shall be appointed by the organization representing the majority of the public school boards in this State."  Id. § 2102(b)(1)(B).  The VSBA made these appointments and pays the administrative and staff costs for the five employer representatives.  The Commission otherwise acts independently of the VSBA.  Id. §§ 2102(e), 2103.

¶ 9.     In 2018, the Legislature also empowered the VSBA to appoint three of the six members of the governing board of a "health benefit association," established to offer health benefit plans to all Vermont school employers for coverage of their employees.  24 V.S.A. § 4947(d)(1).  The VSBA made these appointments to the health benefit association, and provides some staff support to the board members.  The health benefit association otherwise acts independently of the VSBA.

¶ 10.    In 2017, the Legislature directed the VSBA and the Vermont Superintendents Association to develop recommendations for legislation in connection with school district mergers under Act 46.  2017, No. 49, § 8.  The VSBA and the Vermont Superintendents Association reviewed the question, determined that no statutory changes were needed, and advised the House and Senate Education Committees to that effect.

¶ 11.    Several other statutes empower the VSBA to appoint members to state boards or to provide advice to executive agencies.  See 3 V.S.A. § 522(a), (a)(8) (creating nine-member Vermont Pension Investment Commission, to include one VSBA-appointed member appointed); 16 V.S.A. § 570(d)(2) (directing Secretary of Education to establish Advisory Council on harassment, hazing, and bullying that includes executive director of VSBA); 16 V.S.A. § 1693(b)

4

(requiring Governor to consult with VSBA and other entities before appointing member of Vermont Standards Board for Professional Educators); 16 V.S.A. § 2903a(b)(1)(D) (creating sixteen-member Advisory Council on Literacy, to include executive director of VSBA); 24 V.S.A. § 5062(a)(1)(D) (creating five-member Retirement Board, including one Governor-appointed employer representative chosen from list of three nominations jointly submitted by VSBA and Vermont League of Cities and Towns); 32 V.S.A. § 163(11)(A)(i) (directing state auditor of accounts to consult with VSBA and other entities to develop "a document designed to determine the internal financial controls in place to ensure proper use of all public funds" for use by counties, municipalities, supervisory unions, and supervisory districts); 33 V.S.A. § 4602(a)(10) (creating twenty-three-member Building Bright Futures Council, to include one at-large member of school board recommended by VSBA).

¶ 12.   The VSBA itself does not manage or operate supervisory unions, school districts, and schools, or provide education to students.  Beyond the statutory functions listed above, the VSBA has no decision-making authority over issues faced by its member school boards.  The member school boards themselves generally do not engage in the types of activities that the VSBA does, such as lobbying, consulting, training, or the creation of model policies.

¶ 13.   The VSBA argued in its motion for summary judgment that it did not meet the definition of a public agency set forth in the PRA, that the plain language of the PRA did not include a functional-equivalency test, and that even if such a test applied, the above facts showed that the VSBA was not the functional equivalent of a public agency.  Plaintiff argued in opposition and in his cross-motion for summary judgment that the VSBA was the equivalent of a public agency because it was engaged in public education, a central governmental function; its board members were publicly elected officials; and it received the majority of its funding from public sources.

5

¶ 14. The civil division reasoned that it was unnecessary to determine whether a functional-equivalency test applied under the PRA because the undisputed facts showed that VSBA would not satisfy such a test. The court explained that although the VSBA was involved in education, a largely public function, it did not actually carry out that function. Furthermore, although the VSBA was mentioned in statutes, it was not so entangled in public business that it ought to be subject to the PRA. The court therefore granted summary judgment to the VSBA. This appeal followed.

¶ 15. We review a decision granting summary judgment de novo. Progressive N. Ins. Co. v. Muller, 2020 VT 76, ¶ 8, __ Vt. __, 249 A.3d 24. We will affirm if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Nolan v. Fishman, 2019 VT 63, ¶ 11, 211 Vt. 1, 218 A.3d 1034.

¶ 16. This appeal involves a question of law, namely, whether the VSBA is a "public agency" for purposes of the PRA. See Hum. Rts. Def. Ctr. v. Correct Care Sols., LLC, 2021 VT 63, ¶ 8, __ Vt. __, __ A.3d __ (stating that whether entity is "public agency" for purposes of PRA is legal question of statutory interpretation). "In interpreting a statute, our primary aim is to discern and then implement the Legislature's intent." Id. ¶ 9. If the statutory language is unambiguous, we will apply it as written. Doyle v. City of Burlington Police Dep't, 2019 VT 66, ¶ 5, 211 Vt. 10, 219 A.3d 326. "Only where the Legislature's intent is unclear on the face of the statute do we resort to other tools of statutory construction." Hum. Rts. Def. Ctr., 2021 VT 63, ¶ 9.

¶ 17. The Vermont PRA provides that "[a]ny person may inspect or copy any public record of a public agency." 1 V.S.A. § 316(a). The Act defines "public agency" to mean "any agency, board, department, commission, committee, branch, instrumentality, or authority of the State or any agency, board, committee, department, branch, instrumentality, commission, or authority of any political subdivision of the State." Id. § 317(a)(2). Plaintiff does not argue that

6

the VSBA falls within any of these specified categories. Rather, plaintiff argues that we should adopt the approach taken in several Vermont superior court decisions, and by courts in some other jurisdictions, and consider whether the VSBA is the "functional equivalent" of a public agency for purposes of the PRA.

¶ 18. The first Vermont superior court decision to apply a functional-equivalency test to determine whether an ostensibly private entity was subject to the PRA appears to be Prison Legal News v. Corrections Corp. of America, No. 332-5-13 Wncv, 2014 WL 2565746 (Vt. Super. Ct. Jan. 10, 2014), https://www.vermontjudiciary.org/sites/default/files/documents/2014-5-30-31.pdf [https://perma.cc/QT8P-R9XH]. In that case, the plaintiff made a PRA request for records from the defendant, a private company with which the Department of Corrections (DOC) had contracted to house Vermont prisoners in out-of-state facilities. The plaintiff argued that the defendant was an "instrumentality" or "authority" of the State and was therefore a "public agency" under the PRA. The defendant contended that it was a private company and did not fall within any of the subdefinitions of a public agency in the PRA. The superior court reasoned that although the defendant, on its face, did not appear to meet the definition of a public agency, to hold that such an entity was not subject to the PRA

> would have an anomalous and disturbing consequence: it would enable any public agency to outsource its governmental duties to a private entity and thereby entirely avoid, intentionally or unintentionally, the fundamental interests in transparency and accountability that the Act is designed to protect and that has become a normalized quality and function of government.

Id. at *3. Based on the broad purpose of the PRA and federal and out-of-state case law, the court concluded that the PRA was intended to apply to "private entities that are the functional equivalent of a public agency and the records that are within the scope of that equivalency." Id. at *6. The court considered four nonexclusive factors derived from Connecticut and Tennessee decisions to determine whether the defendant was the functional equivalent of a public agency: "(1) whether

7

the entity performs a governmental function; (2) the level of government funding; (3) the extent of government involvement or regulation; and (4) whether the entity was created by the government." Id. at *4-6 (citing Bd. of Trs. of Woodstock Acad. v. Freedom of Info. Comm'n, 436 A.2d 266 (Conn. 1980), and Memphis Publ'g Co. v. Cherokee Child. & Fam. Servs., 87 S.W.3d 67 (Tenn. 2002)). On the facts before it, the superior court concluded that the private prison corporation was the functional equivalent of a public agency, primarily because it performed the uniquely governmental function of imprisonment. Id. at *7.

¶ 19. Vermont superior courts have since applied this functional-equivalency test in several other PRA cases. See, e.g., Hum. Rts. Def. Ctr. v. Correct Care Sols., LLC, No. 51-2-19 Wncv, 2020 WL 11232116, at *4 (Vt. Super. Ct. Nov. 06, 2020), https:// www. vermontjudiciary.org/sites/default/files/documents/2021-5-28-23.pdf [https://perma.cc/47QU-DGPG] (concluding that contractor providing health care to Vermont inmates was not functional equivalent of public agency), rev'd, 2021 VT 63; Whitaker v. Vt. Info. Tech. Leaders, Inc., No. 781-12-15 Wncv, 2016 WL 8260068, at *6 (Vt. Super. Ct. Oct. 28, 2016), https://www. vermontjudiciary.org/sites/default/files/documents/2018-1-24-6.pdf [https://perma.cc/AE5S-HUSL] (holding that hybrid public-private entity created by statute to develop statewide health information technology plan was functional equivalent of public agency); see also Long v. City of Burlington, 2018 VT 103, ¶ 11, 208 Vt. 418, 199 A.3d 542 (describing one of superior court's alternative holdings, which was that city's economic consultant was not functional equivalent of city). Plaintiff contends that we should adopt this approach and apply it here to hold that the VSBA is the functional equivalent of a public agency that is required to open its records to public inspection and copying under the PRA.

¶ 20. As the VSBA argues, the PRA's definition of a "public agency" does not expressly include private entities acting as the functional equivalents of state or local agencies. See 1 V.S.A.

8

§ 317(a)(2) (defining "public agency" as "agency, board, department, commission, committee, branch, instrumentality, or authority" of state or political subdivision). In our recent decision in Human Rights Defense Center v. Correct Care Solutions, LLC, we tacitly recognized that to the extent that the Legislature has recognized this concept within the plain language of the PRA, it is encompassed within the term "instrumentality." 2021 VT 63. The plaintiff in that case argued that a private corporation which contracted with the DOC to provide medical care to incarcerated Vermonters was the functional equivalent of a public agency for purposes of the PRA. We declined to take that approach, explaining that the functional-equivalency analysis was based on courts' recognition "that 'any general definition' of the term 'agency' is 'of only limited utility to a court confronted with one of the myriad organizational arrangements for getting the business of the government done.' " Id. ¶ 13 (quoting Washington Rsch. Project, Inc. v. Dep't of Health, Ed. & Welfare, 504 F.2d 238, 245-46 (D.C. Cir. 1974)). We concluded that the PRA's definition of an "agency" was "not so general as to have limited utility under the circumstances" of the case before us. Id. We found it unnecessary to engage in a functional-equivalency analysis because we concluded that the defendant was an "instrumentality" of the state and therefore met the definition of a public agency under the PRA. Id.

¶ 21. We now clarify what we implicitly suggested in Human Rights Defense Center: there is no general "functional-equivalency" concept contained in the PRA. Although we must construe the PRA liberally in favor of disclosure, 1 V.S.A. § 315(a), we cannot ignore its plain text. See Doyle, 2019 VT 66, ¶ 5 (explaining that courts will apply plain meaning of PRA). The definition of "public agency" in 1 V.S.A. § 317(a)(2) contains no reference to functional equivalents; rather, it sets forth a limited list of traditional, well-established forms in which government chooses to organize itself. To the extent that the Legislature intended for the PRA to apply to a nongovernmental entity, that entity must qualify as one of these forms.

¶ 22.     The only definition that potentially applies to the VSBA is an "instrumentality."  In Human Rights Defense Center, we explained that the plain meaning of "instrumentality" is " '[a] means or agency through which a function of another entity is accomplished, such as a branch of a governing body.' "  Id. ¶ 16 (quoting Instrumentality, Black's Law Dictionary (11th ed. 2019)). In that case, it was undisputed that during the relevant time period, the defendant was the sole means through which the DOC provided medical care to incarcerated persons.  We then considered whether this was a uniquely governmental function, explaining:

> The question of whether this function is fundamentally governmental in nature is important to our analysis for the same reason that courts applying the functional-equivalency test consider it the "cornerstone" of their inquiry: because an interpretation of our public-records act which allows a governmental agency to— intentionally or unintentionally—insulate records relating to the performance of its responsibilities from disclosure by delegating those responsibilities to a private entity would defeat the purpose of the Act.

Id. ¶ 17.     We determined that providing medical care to inmates was a "quintessential governmental function" which the government had a constitutional duty to provide.  Id. ¶¶ 18-19. Furthermore, we noted that the DOC had set forth detailed policies governing "when, whether, and how" the defendant was to provide services to inmates, and the defendant was exercising the DOC's authority to administer government policy.  Id. ¶ 20.  In conclusion, we held that "where the state contracts with a private entity to discharge the entirety of a fundamental and uniquely governmental obligation owed to its citizens, that entity acts as an 'instrumentality' of the State." Id. ¶ 21.

¶ 23.     Our decision in Human Rights Defense Center makes clear that the determination of whether a particular entity is an "instrumentality" must be made on a case-by-case basis, looking at the facts surrounding the government's relationship with that entity.  We decline at this time to adopt a particular test for resolving this inquiry, though we note that there may be significant

10

overlap between the factors relevant to determining whether an entity is an "instrumentality" and the functional-equivalency tests adopted by Connecticut, Tennessee, and other courts in applying their public-records statutes. See Hum. Rts. Def. Ctr., 2021 VT 63, ¶ 17 n.2. As Human Rights Defense Center instructs, however, the nature of the function carried out by the private entity must be a primary focus of the analysis. Id. ¶ 17.

¶ 24. Turning to the facts of this case, we conclude that the VSBA does not qualify as an "instrumentality" because it has not been delegated responsibility for performing a uniquely governmental function. It is true that the VSBA is involved in aspects of public education, the provision of which is a fundamental governmental obligation. See Brigham v. State, 166 Vt. 246, 258, 692 A.2d 384, 391 (1997) (noting that "education was the only governmental service considered worthy of constitutional status" by drafters of Vermont Constitution). But the VSBA does not itself perform the function of providing public education to Vermont pupils. Rather, the VSBA offers support to its member school boards by advocating for educational policy at the statewide level and providing training, information, and advice to members. The VSBA does not make decisions for local school boards and these school boards have not delegated their authority to the VSBA. The VSBA is therefore distinguishable from other private entities which have been found subject to the PRA. See Hum. Rts. Def. Ctr., 2021 VT 63, ¶ 18; Prison Legal News, 2014 WL 2565746, at *7; Whitaker, 2016 WL 8260068, at *6.

¶ 25. Nor has the VSBA been tasked by the Legislature with performing a governmental role. The statutes mentioning the VSBA give it and other organizations the power to make appointments to various boards and commissions or direct it and other organizations to provide recommendations to the Legislature on specific education-related policies. They do not require the VSBA to provide education to pupils or to create or implement other uniquely governmental programs. The fact that the Legislature has given the VSBA, as a stakeholder with respect to

11

education and employer-related issues, the power to appoint members to certain boards and commissions, is not equivalent to delegating a uniquely governmental role.

¶ 26.    In the absence of a showing that the VSBA is the means through which the state or its subdivisions performs a fundamentally governmental function, the other factors identified by plaintiff—that the VSBA receives more than half of its funding from public school boards, and that its governing board is comprised of elected public school board members—are not sufficient to demonstrate that it is an "instrumentality" of the government.  The civil division therefore properly determined that the VSBA was not a "public agency" subject to the PRA.

Affirmed.

FOR THE COURT:

_____
Associate Justice